[742 NYS2d 16]

New York County Lawyers' Association, Respondent, v State of New York, Appellant.

First Department, May 9, 2002

## APPEARANCES OF COUNSEL

*Zachary S. McGee* of counsel (*Frank S. Moseley* on the brief; *Davis Polk & Wardwell* and *New York County Lawyers' Association,* attorneys), for respondent.

*Victor Paladino* of counsel (*Daniel Smirlock* and *Nancy A. Spiegel* on the brief; *Eliot Spitzer, Attorney General,* attorney), for appellant.

## OPINION OF THE COURT

SAXE, J.P.

This action was commenced in response to the widely recognized crisis in New York's assigned counsel system, by which, as a report issued by the Chief Administrative Judge of the New York State Courts has recognized, "woefully inadequate" rates of compensation for assigned counsel have resulted in a drastic drop in the number of attorneys willing to serve in that capacity (*see,* Hon. Jonathan Lippman and Hon. Juanita Bing Newton, *Assigned Counsel Compensation in New York: A Growing Crisis* [Jan. 2000] [available at <http://www.courts.state.ny.us/reporter/webdocs/18b.htm>]). The report goes on to explain that the dramatically smaller number of attorneys having to handle a significantly larger number of cases is causing major disruptions in the handling of criminal prosecutions and Family Court cases (*id.*).

Plaintiff New York County Lawyers' Association (NYCLA), seeks declaratory and injunctive relief in this action against the State of New York. It challenges the compensation level and limits for assigned counsel, as well as the distinction between in-court and out-of-court compensation levels, set by New York County Law § 722-b, Family Court Act § 245 and Judiciary Law § 35. Its basic contention is that the statutes' levels of compensation have resulted in such systemic deficiencies in the assigned counsel system that a severe and unacceptably

high risk has been created that children and indigent adults will be denied their constitutional rights to meaningful and effective assistance of assigned counsel. It asserts that the case is brought solely on behalf of those clients.

The defendant State has moved to dismiss the complaint on the ground that NYCLA lacks standing to bring this action and that the complaint asserts nonjusticiable claims. We agree with the motion court that dismissal was not warranted on any of the asserted grounds and, accordingly, affirm.

JUSTICIABILITY

"Justiciability * * * refers, in the broad sense, to matters resolvable by the judicial branch of government as opposed to the executive or legislative branches or their extensions" (*Jiggetts v Grinker*, 75 NY2d 411, 415).

■ Defendant State takes the position that this matter is not justiciable because the Legislature has reserved to itself the task of establishing the rates of compensation for assigned counsel, and court interference in that area would violate the separation of powers. However, as the Court in *Klostermann v Cuomo* (61 NY2d 525, 531) stated, when the Legislature creates a duty of compensation "it is within the courts' competence to ascertain whether [the State] has satisfied [that] duty * * * and, if it has not, to direct that the [State] proceed forthwith to do so." Even though the Legislature, when creating that duty, also established rates for compensation, the courts must have the authority to examine that legislation to determine whether its monetary cap provisions create or result in the alleged constitutional infirmity (*see, Board of Educ., Levittown Union Free School Dist. v Nyquist*, 57 NY2d 27, 39, *appeal dismissed* 459 US 1138). For instance, if the Legislature had fixed compensation for assigned counsel at $1 per case, or provided no funds for such compensation, and as a result no attorneys applied to represent the poor, the justiciability of the claim would be clear, since under such circumstances a violation of the constitutional mandate to provide counsel to the poor would be evident.

Moreover, while there are cases for which the court is asked to rule in an area in which "it is ill-equipped to undertake the responsibility and [in which] other branches of government are far more suited to the task" (*Jones v Beame*, 45 NY2d 402, 409), this is not such a case. In *Jones v Beame* (*supra*), the plaintiffs charged that animals in New York City zoos were given inadequate care as a result of a fiscal crisis; the Court

observed that "it is untenable that the judicial process, at the instance of particular persons and groups affected by or concerned with the inevitable consequences of the city's fiscal condition, should intervene and reorder priorities, allocate the limited resources available, and in effect direct how the vast municipal enterprise should conduct its affairs" (45 NY2d at 407). In its companion case of *Bowen v State Bd. of Social Welfare*, the plaintiffs claimed that mentally ill patients were being prematurely discharged from psychiatric hospitals and placed in the community without adequate supervision; the Court remarked that not only was the judicial system ill-equipped to deal with the fiscal problems involved, but that it was also not the proper forum to deal with the conflicting views as to the better settings to treat mental patients (*id.* at 407-408).

In contrast, as the Court observed in *Bruno v Codd* (47 NY2d 582, 588),

"the judicial process may not be designed to assume the management and operation of an executive enterprise or to correct broad legislative and administrative policy, which ultimately may be dependent on the political process [citations omitted], *but justiciability hardly can be denied when what is at stake is * * * the enforcement of clear, nondiscretionary and easily definable statutes and rules adopted for the governance of a judicial entity"* (emphasis added).

In *Bruno v Codd*, a group of battered wives claimed that clerks of the Family Court and officials of the Department of Probation, with the consent or approval of their supervisors, were engaging in a pattern of conduct calculated to deter battered wives from filing petitions for orders of protection. The Court, rejecting the assertion that the dispute was nonjusticiable, emphasized that "the subject of the present suit is the *operation and administration of the courts by the courts"* (*id.* [emphasis added]). Similarly, at the heart of the present action is the demand that the court system ensure that its processes do not cause systemic violations of constitutional guarantees. We therefore conclude that the matter must be deemed justiciable.

Nor do we agree with the State's argument that the claim is not ripe for litigation due to the absence of specific alleged instances in which the right to effective counsel has been violated, where the factual support provided tends to demonstrate only a prospective denial of that right.

While there are courts in some jurisdictions that have found such claims of prospective harm not to be justiciable (*see, Kennedy v Carlson*, 544 NW2d 1 [Minn]; *see also, Platt v State*, 664 NE2d 357 [Ct App Ind], *cert denied* 520 US 1187), other jurisdictions have permitted such prospective claims to proceed (*see, e.g., State v Quitman County*, 807 So 2d 401 [Miss]; *Luckey v Harris*, 860 F2d 1012 [11th Cir 1988], *cert denied* 495 US 957).

In this state, the Court of Appeals recognized the validity of a claim of prospective injury, albeit in a different context, citing with approval the ruling in *Luckey v Harris* (*supra; see, Matter of Swinton v Safir*, 93 NY2d 758, 765-766). In *Swinton*, a terminated Police Department employee sought prospective relief in the form of a "name-clearing hearing" and expungement of stigmatizing material from his personnel file before the Department could disseminate his employment record to any future employer. Acknowledging that three circuit courts "have insisted upon actual public disclosure before a discharged employee's liberty interest in a name-clearing hearing can be invoked" (*id.* at 764), the Court nevertheless agreed with other circuit courts that proof of a "likelihood of dissemination is sufficient to establish entitlement to a departmental name-clearing hearing" (*id.* at 765). It then went out to observe that "[*i*]*n other contexts, proof of a likelihood of the occurrence of a threatened deprivation of constitutional rights is sufficient to justify prospective or preventive remedies* under 42 USC § 1983, without awaiting actual injury" (*id.* at 765-766 [emphasis added], citing *Luckey v Harris*, 860 F2d 1012, *supra*).

For all the foregoing reasons, we conclude that plaintiff has alleged a justiciable claim of a prospective injury. We consider this particularly appropriate since "[t]he primary purpose of declaratory judgments is to adjudicate the parties' rights before a 'wrong' actually occurs in the hope that later litigation will be unnecessary" (*Klostermann v Cuomo*, 61 NY2d 525, 538).

STANDING

Although there is generally a "prohibition on one litigant raising the legal rights of another" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773 [1991]), the concept of third-party standing allows a third party who has suffered an "injury in fact" to assert the constitutional rights of others (*see, Powers v Ohio*, 499 US 400, 410-412; *People v Gary M.*, 138 Misc 2d 1081, 1091). In *People v Kern* (149 AD2d 187, 233, *affd* 75 NY2d 638), the Second Department explained:

"Three factors * * * are relevant in determining whether the principle of third-party standing applies in a particular case * * * (1) the presence of some substantial relationship between the party asserting the claim and the rightholder, (2) the impossibility of the rightholder asserting his own rights, and (3) the need to avoid a dilution of the parties' constitutional rights * * *." (*Id.*, citing *Griswold v Connecticut*, 381 US 479; *National Assn. for Advancement of Colored People v State of Ala. ex rel. Patterson*, 357 US 449; *Eisenstadt v Baird*, 405 US 438.)

■ The preliminary requirement that the plaintiff have suffered an injury in fact is sufficiently supported here to avoid dismissal. As the motion court pointed out, NYCLA alleges that the complained-of circumstances have rendered it unable to satisfactorily discharge its responsibilities, as a member of the Departmental Advisory Committee to the Family Court and the Departmental Central Screening Committee of the Criminal Courts Panel Plan of the Assigned Counsel Plan, to provide and maintain a list of available and adequately trained attorneys for the Family Court and Criminal Court assigned counsel panels.

Furthermore, it is asserted that plaintiff's members have been required to take on more work than they can handle, as a result of pressure from judges desperate to find counsel to assign to cases. We reject the argument that since such claimed pressure is not created by any statutory duty, it may not be relied upon as causing injury to plaintiff's members. The claim that these attorneys find it necessary to accept cases they cannot handle because of pressure from judges is sufficient; that the pressure is caused by the practical realities of the practice of law, rather than by a statutory duty, does not negate the existence of the alleged injury.

■ As to the need for a "substantial relationship" between those whose rights are threatened and the nominal plaintiff, NYCLA is an important bar association, which has played a significant role in the creation and implementation of the Assigned Counsel Plan in New York County, and which continues to train attorneys to provide effective representation to children and indigent adults under the Plan. The organization and its panel attorney members have an inherent interest in providing effective representation for, and protecting the rights of, their present and prospective clients, the children and indigent

adults whose constitutional rights are at issue. The inter-relationship between the rights and interests of the plaintiff attorneys and the subject clients is sufficiently alleged to satisfy the substantial relationship test.

■ The "impossibility" requirement, namely, that the children and indigent adults for whom counsel are assigned would not litigate in their own behalf to protect their rights, is also sufficiently established to avoid dismissal. Notwithstanding the State's suggestion that the indigent adults and children served by the 18-B panels are able to assert their own legal rights, it is readily apparent that the clients themselves are not in a position to protect their own rights to receive effective assistance from attorneys not overburdened with excessive caseloads. Further, the only organizations likely to step forward to do so are attorney organizations. Nor do we agree with the State's contention that those rights can be effectively protected in the context of individuals' postjudgment remedies, such as appeals of convictions on grounds of ineffective assistance, or writs of habeas corpus.

■ As to the third requirement of *People v Kern* (*supra*), namely, the need to establish a possible dilution of constitutional rights in the absence of permitting the third-party standing, the State again maintains that indigent children and adults do not need NYCLA to advocate on their behalf. It contends that in the event some indigent clients receive ineffective representation, they will have other remedies available to vindicate their rights, such as an appeal of the ultimate determination on the ground of ineffective assistance, or perhaps a class action brought by the indigent litigants themselves. We reject this contention. In view of the allegation of a systemic problem resulting in widespread violation of the right to effective representation, the motion court properly found sufficient basis to conclude that the clients' rights would likely be adversely affected or diluted in the absence of the litigation (*see, People v Kern, supra* at 234).

■ In addition to third-party standing, NYCLA also properly asserts organizational standing, under the rationale set out in *Grant v Cuomo* (130 AD2d 154, *affd* 73 NY2d 820):

> "we cannot ignore the obvious fact that if organizations of this kind are denied standing, the practical effect would be to exempt from judicial review the failure of the defendants * * * to comply with their statutory obligations. Manifestly, the abused chil-

dren are not themselves able to seek a judicial remedy, nor is it likely that parents or caretakers, the objects of the claims of abuse or maltreatment, would undertake to secure a remedy. Given the obvious reality that the protection of abused or maltreated children is a central concern of our society, and given the historic relationship of organizations concerned with the care and protection of children to the goals sought to be achieved by the relevant statute, we are persuaded that Special Term was justified in denying the motion to dismiss as to the organizational plaintiffs." (*Id.* at 159; *see also, Community Serv. Socy. v Cuomo*, 167 AD2d 168, 170 ["to hold that membership organizations of this type do not have standing in these situations could possibly leave unprotected that part of society most in need of the representation and protection these organizations are able to provide"]; *Mixon v Grinker*, 157 AD2d 423, 427.)

■ Finally, inasmuch as we view the alleged violations of constitutional rights to be based solely upon a claim of prospective harm, the action will not entail proof of past cases in which a NYCLA member was unable to provide effective assistance to a client. Consequently, we reject the State's contention that NYCLA should not be permitted to proceed because of a purported conflict between the interests of NYCLA's members and those of those members' clients.

Accordingly, the order of the Supreme Court, New York County (Lucindo Suarez, J.), entered January 19, 2001, insofar as it denied defendant's motion to dismiss plaintiff's first through eighth causes of action pursuant to CPLR 3211, should be affirmed, without costs.

ROSENBERGER, WALLACH, MARLOW and GONZALEZ, JJ., concur.

Order, Supreme Court, New York County, entered January 19, 2001, affirmed, without costs.