**JUVENILE MATTERS TRIAL LAWYERS ASSOCIATION** Plaintiff,

v.

**JUDICIAL DEPARTMENT, Michael A. Mack, Joseph D'Alesio, Cynthia L. Cunningham, Defendants.**

No.  CIV.A.3:04 CV 773(CF).

United States District Court, D. Connecticut.

March 28, 2005.

Norman A. Pattis, Williams & Pattis, New Haven, CT, for Plaintiff.

Jane R. Rosenberg and Perry A. Zinn Rowthorn, Attorney General's Office; Hartford, CT, for Defendants.

**1.** The named defendants are the Judicial Department of the state of Connecticut; Michael Mack, chief administrative judge for juvenile matters; Joseph D'Alesio, executive director of superior court operations; and Cynthia Cunningham, chief clerk for the Superior Court for juvenile matters. The defendants will be referred to collectively as "the defendants" and individually as necessary.

*RULING ON MOTION TO DISMISS*

DRONEY, District Judge.

The plaintiff, the Juvenile Matters Trial Lawyers Association ("the Association"), is an association of attorneys who provide legal services to juveniles and their families in the Connecticut state courts. The Association brought this action against the Judicial Department of the State of Connecticut ("the Department") and several individual defendants[1] under 42 U.S.C. § 1983, seeking injunctive and declaratory relief. The complaint alleges violations of the Due Process and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution. Pending before the Court is the defendants' motion to dismiss the complaint. For the following reasons, the motion to dismiss [**Doc. #13**] is **GRANTED**.

**I** *Background*

The Connecticut General Statutes provide that "[a]t the commencement of any proceeding concerning the alleged delinquency of a child, the parent or parents or guardian and the child shall have the right to counsel and be so informed by the judge, and that if they are unable to afford counsel that counsel will be provided for them." Conn. Gen.Stat. § 46b–135; *see also* Connecticut Practice Book § 32a–1 (setting forth the right to counsel in juvenile court setting).[2] Apart from delinquency proceedings, the Connecticut General Statutes also generally provide that:

**2.** *See In Re Samantha C.,* 268 Conn. 614, 641–42, 847 A.2d 883 (2004) (noting that the statutes and the Practice Book provide "parents in juvenile matters with a 'right to silence and to counsel' in hearings concerning neglected, uncared-for or dependent children, termination of parental rights proceedings, as well as delinquency proceedings").

In any proceeding on a juvenile matter the judge before whom such proceeding is pending shall, even in the absence of a request to do so, provide an attorney to represent the child or youth, his parent or parents, guardian or other person having control of the child or youth, if such judge determines that the interests of justice so require, and in any proceeding in which the custody of a child is at issue, such judge shall provide an attorney to represent the child and may authorize such attorney or appoint another attorney to represent such child or youth, parent, guardian or other person on an appeal from a decision in such proceeding.

Conn. Gen.Stat. § 46b–136; *see also* Conn. Gen.Stat. § 45a–717 (addressing appointment of counsel in regard to a petition to terminate parental rights).[3]

To effect the appointment powers set forth in these statutes and Practice Book provisions, the Department maintains a panel of attorneys who are willing to accept appointment in matters before the Superior Court and the Connecticut appellate courts. *See In the Interest of Katherine M.*, 1998 WL 867268 (Conn.Super.Ct., Dec. 2, 1998) (explaining the panel system and its compensation system).

The complaint here alleges that, in 1999, the Department revised the compensation system for panel attorneys. Under the revised system, attorneys seeking appointment sign an annual contract with the Department, which places them on the panel and makes them eligible to represent indigent children and their families. The standard terms of the contracts provide that the attorney will be paid a flat fee of $350 per case for the first thirty hours of representation, and $40 per hour for representation beyond the initial thirty hours. The Association claims that these rates are substantially lower than those paid to Special Public Defenders appointed in Connecticut state courts to represent adults accused of crimes. The Association also claims that "the rates and conditions of compensation are such that the persons represented by appointed counsel are routinely deprived of effective representation, notwithstanding the good faith efforts of court appointed counsel to provide zealous representation."[4]

## II  *Procedural History*

On May 10, 2004, the Association brought this action against the defendants, seeking: (1) a declaration that the rate of pay for panel attorneys is insufficient and inimical to the interests of their clients; (2) a declaration that the Department's administration of contracts with attorneys violates the separation of powers doctrine; (3) an injunction requiring the Department to pay a rate "adequate" to assure effective representation; (4) an injunction requiring the defendants to cease conducting audits of attorneys; and (5) an injunction requiring the defendants to adequately fund costs related to representation.

---

3.  *See also* General Statutes § 45a–132 ("(a) In any proceeding before a court of probate or the Superior Court ... the judge or magistrate may appoint a guardian ad litem for any minor or incompetent, undetermined or unborn person .... (b) The appointment shall not be mandatory, but shall be within the discretion of the judge or magistrate"); *In re Tayquon*, 76 Conn.App. 693, 700, 821 A.2d 796 (2004) ("not[ing] that the court has broad discretion to appoint counsel and guardians ad litem for minor parties").

4.  The Association also alleges that, beginning in 2003, in response to an isolated incident of over-charging by individual attorneys, the Department instituted audits of attorneys who billed in excess of 30 hours to a case, and routinely sought reimbursement of fees it contends were overpaid.

The defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), claiming that: (1) the Eleventh Amendment of the United States Constitution bars the Association's claims against the Department; (2) the Association lacks standing; and (3) the Association has failed to state a claim upon which relief may be granted. Because issues of standing implicate the subject matter jurisdiction of this Court, that argument will be addressed first, and the standards of Fed.R.Civ.P. 12(b)(1) will be applied. *See Whitmore v. Arkansas,* 495 U.S. 149, 155–56, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing").

### III *Motion to Dismiss for Lack of Standing*

#### A) *Standard of Review*

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004). "The court may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Jaghory v. New York State Dept. of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (quotation marks omitted). However, "[i]t is the affirmative burden of the party invoking [federal subject matter] jurisdiction... to proffer the necessary factual predicate-not just an allegation in a complaint-to support jurisdiction." *London v. Polishook,* 189 F.3d 196, 199 (2d Cir.1999) (citations omitted); *see also Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994) ("In determining whether a plaintiff has met this burden, we will not draw argumentative inferences in the plaintiff's favor"). Also, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000) (citing *Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1011 (2d Cir.1986)); *compare Courtenay Communications Corp. v. Hall,* 334 F.3d 210, 213 (2d Cir.2003) ("When presented with a 12(b)(6) motion, the district court may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment").

#### B) *Discussion*

■ Generally, "[t]he doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Kowalski v. Tesmer,* ── U.S. ──, 125 S.Ct. 564, 567, 160 L.Ed.2d 519 (2004) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In regard to the constitutional standing requirement, Professor Chemerinsky has summarized:

> The Supreme Court has said that the core of Article III's requirement for cases and controversies is found in the rule that standing is limited to those who allege that they personally have suffered or imminently will suffer an injury. The Court has explained, '[t]he plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.'

Erwin Chemerinsky, Constitutional Law: Principles and Policies § 2.5.2 at 63 (2d ed.2002) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). The constitutional standing requirement promotes separation of powers among the different branches of government, the system of federalism which leaves certain authority to state governments, judicial efficiency, and, finally, fairness by "ensuring that people will raise only their own rights and concerns" and not those of others who may not completely concur with the litigants. *See Id.,* pg. 60–62 (discussing the values served by limiting standing).

The prudential limitations on standing have most frequently been applied by the Supreme Court in the context of "third party standing," where an entity attempts to assert the legal interests of parties not part of the lawsuit. *See Id.* at 82–83 (discussing prudential limitations on third-party standing). For example, in *Kowalski v. Tesmer,* two attorneys brought a constitutional challenge to Michigan's procedure for appointing appellate counsel for indigent defendants who had plead guilty to criminal charges. The attorneys sought to invoke the rights of hypothetical indigent clients to challenge that procedure. The Supreme Court assumed that the attorneys had Article III constitutional standing, and "addressed the alternative threshold question whether they have standing to raise the rights of others." *Kowalski,* —— U.S. at ——, 125 S.Ct. at 567. Ultimately, the Supreme Court concluded that prudential considerations mandated a finding that the attorneys did not have third-party standing. *Id.*

Here, the complaint states that the Association has standing in this action "as a necessary proxy for the interest of all indigent children, parents and other parties with cases pending before the [Superior Court] and the Appellate Courts of the State of Connecticut." In its memorandum in opposition to the motion to dismiss, however, the Association claims that it has standing to bring this action in its own right, on behalf of its members, and on behalf of the clients the member attorneys represent. Consequently, this Court will evaluate the Association's claim of standing in its own right under the constitutional analysis, and the Association's claims of standing on behalf of its members and third party indigent clients under the prudential analysis. *See Id.* (setting forth both analyses).[5]

### 1) Organizational Standing

■■■ The defendants first claim that the Association lacks standing to bring this action in its own right. An organization may file suit on its own behalf "to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the organization itself may enjoy." *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In order to do so, however, an organization must satisfy the constitutional minimum of standing by demonstrating an "injury in fact"; a causal connection between the injury and the conduct of which the party complains; and that it is "likely" a favorable decision will provide redress. *Kowalski,* —— U.S. at ——, 125 S.Ct. at 566; *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In other words, the organization

---

**5.** The analysis of the Association's standing on behalf of its members is referred to in the text as "associational standing", while the analysis of the Association's standing on behalf of clients of panel lawyers is referred to as "third party standing." However, both fit within the general category of third party standing.

must "meet[ ] the same standing test that applies to individuals . . . ."

■ "In order to meet the constitutional minimum of standing to seek injunctive relief, [a plaintiff] must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison,* 356 F.3d 211, 215 (2d Cir.2004) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). "Abstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Id.* (internal quotation marks omitted). In sum, a plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998).

■ The complaint here states that: "As a direct and proximate result of the acts and omissions herein described, children, indigent parents and parties are deprived of effective representation in defense of fundamental constitutional rights. The plaintiff has standing to raise this claim as a necessary proxy for the interest of all indigent children, parents and other parties with cases pending before the [Superior Court] and the Appellate Courts of the State of Connecticut." As the defendants correctly contend, the Association has not alleged any injury to itself in the complaint. To the contrary, the injury alleged in the complaint is ineffective assistance of counsel-an injury which could only be suffered by individuals who are repre-

sented by members of the Association, not the Association itself. Therefore, on its face, the complaint fails to allege an injury to the Association.

In response to the motion to dismiss, the Association submitted an affidavit from Douglas J. Monaghan ("Monaghan") a founding member and secretary of the Association. In his affidavit, Monaghan states that "[a]s a direct consequence of the actions of the defendants in the above-captioned action, two members of the [Association's] board of directors, one of whom was the Vice President, resigned from the board of directors and left the practice of law in the State of Connecticut." [6] In addition, Monaghan states that "numerous members of the [Association] no longer accept contracts with the Judicial [Department] for child protection cases," and a substantial number of members of the juvenile bar of the State of Connecticut refuse to join the [Association] for fear of retribution from the named defendants. Apart from the hearsay issues concerning portions of Monaghan's affidavit, these statements fail to demonstrate the specific injury or threat of injury adequate to confer organizational standing. First, the loss of two members in the past does not demonstrate a "real and immediate" threat of future harm to the Association. *Shain v. Ellison,* 356 F.3d at 215.[7] Indeed, Monaghan does not allege that other members will leave in the future, but merely points to the prior departure of two of its members. *See Id.* (a party seeking injunctive relief "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [it]

---

6. As noted previously in the text, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States,* 201 F.3d at 113.

7. The Association's membership application form, which was submitted in opposition to the motion to dismiss, indicates that the Association only was formed on January 15, 2004.

. . . will be injured in the future") (quoting *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998)).

Second, even if Monaghan is correct that "numerous members of the [Association] no longer accept contracts with the Judicial [Department]," it is not clear how this would harm *the Association.* Rather, if certain members of the Association decline to enter into future contracts with the Department, it would be those lawyers and the indigent individuals and families that would otherwise be represented by those lawyers that could be affected.

Third, although Monaghan states that some attorneys may be reluctant to join the Association, that injury is "conjectural or hypothetical" without more factual support, and therefore insufficient to confer organizational standing upon the Association. *Id.* ("abstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical") (quotation marks omitted).[8] Moreover, the fear of retribution from joining the Association is different from the specific interests advocated by the Association in this suit.

Finally, one need not be a member of the Association to enter into contracts with the Department, nor is the Association's membership limited to panel attorneys. The Association's stated goals are much broader than seeking the relief requested in this action, and its membership is broader than just those attorneys on the Department's panel. *See* footnote 10, *infra.*

Consequently, the Association lacks standing to sue on its own behalf in the instant matter. *Compare Irish Lesbian and Gay Organization,* 143 F.3d at 649–50 (finding that plaintiff had organizational standing because the alleged injuries included loss of opportunity to express the organization's message and harm to its reputation in the Irish community-especially when one of the group's stated purposes was to combat prejudice against its members within the Irish community).

2) Associational Standing

■■ The Association also argues that it has standing to bring a claim on behalf of its members, commonly referred to as associational standing. The Supreme Court has held that "an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343–45, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *accord Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *National Motor Freight Traffic Association v. United States,* 372 U.S. 246, 247, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963). To do so, "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin,* 422 U.S. at 511, 95 S.Ct. 2197. In other words, an association must demonstrate that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation

---

8. The Court notes that the Association has not filed a motion to amend its complaint in order to assert allegations of injuries to itself. To the contrary, the statements of harm made by Monaghan in his affidavit rely on the originally filed complaint, which, as detailed previously, fails to set forth any allegation of harm to the Association. However, the Court has considered this information in reviewing organizational injury to the Association.

of individual members in the lawsuit." *Irish Lesbian and Gay Organization,* 143 F.3d at 649 (quoting *Hunt*); *accord In re Holocaust Victim Assets Litigation,* 225 F.3d 191, 196 (2d Cir.2000); *Sun City Taxpayers' Ass'n v. Citizens Utilities Co.,* 847 F.Supp. 281, 285 (D.Conn.1994).

In regard to the first element, it does not appear that individual members of the Association would have standing to sue on their own behalf. As previously noted, the injury alleged in the complaint is that "the rates and conditions of compensation [provided by the standard contract] are such that the persons represented by appointed counsel are routinely deprived of effective representation, notwithstanding the good faith efforts of court appointed counsel to provide zealous representation." Thus, it is the clients that the Association claims are harmed by the rates of compensation, not the lawyers.

In its brief, the Association now claims a different "direct injury" to its member attorneys who have contracts with the Department, though: low pay for representation of their clients. However, this also is not the type of "injury in fact" required by the prudential standing doctrine to permit this claim; those member attorneys voluntarily agreed to enter into contracts with the Department, and consented to the pay scale at that time. Although these lawyers may be dissatisfied with their level of compensation, they have not suffered the required "injury in fact" that would justify their pursuing this claim since they concede that they voluntarily undertook this work.[9]

The second element for associational standing is satisfied, as the interests the Association seeks to protect-the rights of indigent individuals and families to receive effective representation in the juvenile courts of Connecticut and adequate pay for panel attorneys-are among the Association's stated purposes.[10]

As to the third element for associational standing, however, the Court finds that both the claim asserted and the relief requested require the participation of individual members in the lawsuit. First, in order to prove the essential claim in the complaint, that the contract leads to ineffective assistance of counsel, it would be necessary for the individual members of the association to show how the rates and terms of the contracts lead to ineffective

9. The complaint seeks prospective declaratory and injunctive relief in the form of a higher level of compensation paid to its members through contracts with the Department. This relief is sought in order to address the alleged ineffective representation that indigent families and individuals are receiving under the current level of compensation. To the extent the Association may now be seeking retroactive monetary damages on behalf of its members for the "direct injury" of low pay, it lacks standing to do so. *See, e.g., Bano v. Union Carbide Corp.,* 361 F.3d 696, 714 (2d Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members"); *National Coalition Government of the Union of Burma v. Unocal, Inc.,* 176 F.R.D. 329, (C.D.Cal.1997) ("It is generally accepted that associational standing is precluded where the organization seeks to obtain damages on behalf of its members")(citing cases).

10. The Association's membership form indicates that it "was established for the purpose of encouraging the Juvenile Matters Bar to take a leadership role in significant matters of public concern regarding juvenile law; to encourage the administration of justice in the Juvenile Matters Courts; to encourage the administration of justice in the Juvenile Matters Bar and to encourage harmonious interaction among the Juvenile Matters Bar; to participate in shaping legislation affecting the administration of justice in the Juvenile Matters Courts and related concerns; to cooperate with bar associations of the State and Nation and of other jurisdictions in the furtherance of the objects of this association."

representation in particular circumstances, and in particular cases. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 714–15 (2d Cir.2004) (organizations lacked associational standing because the individual participation of the individual members was required); *Irish Lesbian and Gay Organization*, 143 F.3d at 649 (district court's finding that organization lacked associational standing was "obviously correct" because individual members' participation would be required to establish allegations that such individuals "suffered humiliation, had lost their jobs, been arrested, and been told they were 'not Irish' "); *see also In the Interest of Katherine M.*, 1998 WL 867268 (Conn.Super.Ct., Dec. 2, 1998) (noting "there was no specific evidence as to the professional financial circumstances of [the appointed] counsel for the respondent mother," and how that may have effected the representation, because that attorney had not testified). Indeed, in order for the Association to argue that the terms and rates of the contracts are leading to ineffective representation for indigent individuals and families, it would have to argue that its own members currently are providing such ineffective representation. This argument likely would conflict with the interests of at least some of its members, who would also wish to address the issue themselves.

Second, as to the relief requested, the Association essentially asks this Court to raise the pay provided to panel attorneys through contracts with the Department to a level that would provide effective representation to their clients. Again, in order to provide that relief, individual panel attorneys would need to testify specifically as to how the current rate of pay affects their representation, and what level of increase would remedy their alleged ineffective representation. *Bano v. Union Carbide Corp.*, 361 F.3d at 714 (an "organization lacks standing to assert claims of injunctive relief on behalf of its members where ... 'the relief requested [would] require [ ] the participation of individual members in the lawsuit' ") (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383).

Because the Association cannot meet two of the elements for associational standing, the Court finds that the Association lacks standing to bring this action on behalf of its members.

### 3) Third Party Standing

The Supreme Court has cautioned that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. at 499, 95 S.Ct. 2197. Although the Supreme Court has "recogniz[ed] that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another," it has "not looked favorably upon third-party standing." *Kowalski v. Tesmer*, —— U.S. at ——, 125 S.Ct. at 567 (rejecting attorneys' attempt to assert third-party standing); *see also Conn v. Gabbert*, 526 U.S. 286, 292–293, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (rejecting an attorney's attempt to adjudicate the rights of a client).

■ Thus, a litigant has the ability to "bring actions on behalf of third parties, provided three important criteria are satisfied: The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute ... the litigant must have a close relation to the third party ... and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *accord Campbell*

*v. Louisiana,* 523 U.S. 392, 397, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998); *Camacho v. Brandon,* 317 F.3d 153, 159 (2d Cir.2003); *see also Kowalski v. Tesmer,* — U.S. at ———–——, 125 S.Ct. at 567–68 (noting that while the first criteria is not "absolute," a party seeking third-party standing must establish the "close relationship" and "hindrance" criteria).

■ As to the first criterion, the Court finds that the Association has not suffered an "injury in fact" that would give it a "sufficiently concrete interest" in the issue in dispute. As noted previously in this ruling, the injury alleged in the complaint-ineffective representation-relates to the individuals and families that receive appointed counsel, and the Association has not set forth a "real and immediate" threat of injury to itself. *Compare Powers v. Ohio,* 499 U.S. at 411, 111 S.Ct. 1364 (plaintiff, a criminal defendant, suffered an injury in fact by exclusion of juror through race-based peremptory challenge); *Camacho v. Brandon,* 317 F.3d at 159 (plaintiff suffered an injury, as evidenced by $46,500 verdict in his favor in a related civil proceeding). However, because the failure to establish this criterion is not an absolute bar to third-party standing, this Court also must address the other two criteria-closeness and hindrance. *Kowalski v. Tesmer,* — U.S. at ———–——, 125 S.Ct. at 567–68.

As to the "closeness" element, in two cases the U.S. Supreme Court has recognized an attorney-client relationship as sufficiently close to confer third-party standing. In those cases, however, the attorneys were invoking the rights of ex-isting clients. *See Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *Department of Labor v. Triplett,* 494 U.S. 715, 720–21, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990). As mentioned above, however, the Court recently held that two attorneys seeking to challenge the Michigan procedure for appointing appellate counsel for indigent defendants did not have the "requisite closeness" for third party standing because they sought to assert their challenge on behalf of hypothetical clients. *Kowalski v. Tesmer,* — U.S. at ——, 125 S.Ct. at 568. In the present case, the Association also has not identified any existing clients on whose behalf this action is brought, but rather claims that it "has standing to raise this claim as a necessary proxy for the interest of all indigent children, parents and other parties with cases pending before the [Superior Court for juvenile matters] and Appellate Courts of the State of Connecticut." Consequently, *Kowalski* instructs that the Association has not demonstrated the requisite closeness for third-party standing.[11]

Even if the Association could establish the requisite closeness, however, it cannot demonstrate that indigent individuals and families are unable to raise the issue presented in this case within the context of the specific juvenile matters cases in which counsel have been appointed for them, or through a separate action challenging the representation they received.

The Court is mindful of one case from the Connecticut Superior Court in which a claim similar to the one presented in this

---

11. The Court notes that in *Kowalski,* the Supreme Court concluded that the individual criminal defendants originally named as plaintiffs were appropriately dismissed because they had the ability to raise their claims in their ongoing state prosecutions. *Kowalski v. Tesmer,* — U.S. at ——, 125 S.Ct. at 569 (citing *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). Because no existing clients were named in this case, the Court need not address how the *Younger* principle would apply to the Association's challenge.

case was asserted by an attorney for an indigent child. *See In the Interest of Katherine M.*, 1998 WL 867268 (Conn.Super.Ct., Dec. 2, 1998) (child's guardian ad litem claimed, on behalf of counsel for the mother, that the fees paid by the Department for the representation of parties in the superior court for juvenile matters were not reasonable).[12] The Association has not indicated why a similar challenge cannot be brought against the system of compensation established in 1999 within the context of a pending juvenile matters case.

In addition, in *Rivera et al. v. Rowland*, 1996 WL 636475 (Conn.Super.Ct., Oct. 23, 1996), the Superior Court denied the defendants' motion to dismiss a purported class action brought by several indigent criminal defendants. In that suit, the plaintiffs alleged that minimally adequate legal representation was not being provided to various categories of indigent defendants in criminal cases due to the high case loads and lack of sufficient resources for their appointed counsel. The Association has not indicated why a similar challenge cannot be brought against the system of panel attorneys used by the Department.

The Association also cites a decision from the New York state courts for the proposition that "it is readily apparent that the clients themselves are not in a position to protect their own rights to receive effective assistance ... the only organizations likely to step forward to do so are attorney organizations." *New York Lawyers' Ass'n v. State of New York*, 294 A.D.2d 69, 75, 742 N.Y.S.2d 16 (1st Dep't 2002).[13] A similar argument was presented in *Kowalski*, where the attorneys argued that "unsophisticated, pro se criminal defendants could not satisfy the necessary procedural requirements, and, if they did, they would be unable to coherently advance the substance of their constitutional claim." *Kowalski v. Tesmer*, —— U.S. at ——, 125 S.Ct. at 569. The Supreme Court rejected that argument, stating that, "[w]hile we agree that an attorney would be valuable to a criminal defendant challenging the constitutionality of the scheme, we do not think that the lack of an attorney here is the type of hindrance necessary to allow another to assert the indigent defendants' rights." The Court is persuaded that the

---

**12.** The claim in that case was brought under the pre–1999 system of compensation.

**13.** In that case, the state court found that the lawyers' association had third-party standing. The facts of this case, however, are different from those here in at least one material way. In *New York Lawyers' Ass'n*, the court found that the plaintiff bar association had alleged an injury in fact on the following basis: that it was "unable to satisfactorily discharge its responsibilities, as a member of the Departmental Advisory Committee to the Family Court and the Departmental Central Screening Committee of the Criminal Courts Panel Plan of the Assigned Counsel Plan, to provide and maintain a list of available and adequately trained attorneys for the Family Court and Criminal Court assigned counsel panels." *New York Lawyers' Ass'n v. State of New York*, 294 A.D.2d at 75, 742 N.Y.S.2d 16. The

complaint in this case fails to allege that the Association had any similar *obligations* with the Department. Moreover, there is no allegation that indigent clients approach the Association seeking representation, that an attorney must be a member of the Association in order to sign a panel contract with the Department (and be appointed to represent an indigent individual or family in juvenile matters) or that the Association has an agreement with the Department to provide training or to facilitate the appointment process. In *New York Lawyers' Ass'n*, the state court found that the plaintiff bar association "played a significant role in the creation and implementation of the Assigned Counsel Plan in New York County, and ... continu[ed] to train attorneys to provide effective representation to children and indigent adults under the plan." *Id.*

situation presented in this case is similar to that presented to *Kowalski,* and that the Association has not demonstrated that indigent individuals and families-and their particular counsel-face the type of hindrance necessary to grant the Association third-party standing. Accordingly, the Court concludes that the Association has failed to establish the three elements necessary for third-party standing.[14]

## IV  *Conclusion*

Although the pay structure for appointed counsel representing indigent families and children in the Connecticut state courts may result in inadequate resources for effective representation in particular cases, the Association has not shown that it has standing to make that claim in this case. This Court is bound by the constitutional and prudential requirements of standing, and cannot permit cases to proceed which do not meet those requirements. Of course, the decision here on the standing of the Association does not mean that other parties could not raise these issues in this Court or the Connecticut Superior Court. Finally, it may very well be that an administrative or legislative review of the issues raised in this suit may be an appropriate course.

For the foregoing reasons, the defendants' motion to dismiss [**Doc. # 13**] is **GRANTED.**

---

14. The Court need not address the defendants' additional two arguments in favor of dismissal: namely that (1) the Eleventh Amendment of the United States Constitution bars the Association's claims against the Department; and (2) the Association has failed to state a claim upon which relief may be granted. As to the plaintiff's claim set forth in footnote 4 of this ruling, concerning audits of member attorneys, the plaintiff lacks standing for, among other reasons, it would require a particularized analysis of individual situations, one that the Association cannot make.