Peters, J.E (dissenting).
We respectfully dissent. Initially, while we agree that the majority has properly articulated our standard of review on this motion to dismiss (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]), we do not believe that it has applied such standard and examined the instant claim in the proper light. Our charge here is simply to determine whether plaintiffs would be entitled to relief on any reasonable view of the facts stated (see Campaign for Fiscal Equity v State of New York, 86 NY2d 307, 318 [1995]; 219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506, 509 [1979]). For the reasons stated below, we believe they would be. Whether plaintiffs can ultimately prove their allegations and establish their case is a matter for another day. Likewise, the majority’s lengthy analysis of potential remedies is patently premature at this juncture.
Moreover, we strongly disagree with the majority’s conclusion that plaintiffs’ claim is based on a fundamental misunderstanding of the constitutional dimensions of the right to counsel in a criminal action. In our opinion, the majority’s view as to what is encompassed by this right may aptly be characterized as myopic.
It is fundamental to our constitutional jurisprudence, at both the federal and state levels, that the right to counsel assures to a defendant “ ‘the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence’ ” (Gideon v Wainwright, 372 US 335, 345 [1963] [emphasis added], quoting Powell v Alabama, 287 US 45, 69 [1932]; see Coleman v Alabama, 399 US 1, 7 [1970]; People v Settles, 46 NY2d 154, 160-161 [1978]; People ex rel. Burgess v Risley, 66 How Pr 67 [Sup Ct, NY County 1883]). In *93 our state, the right of a criminal defendant “to interpose an attorney between himself [or herself] and the sometimes awesome power of the sovereign has long been a cherished principle” which dates back to our prerevolutionary constitutional law, and the protections granted by our State Constitution have developed independently and been extended beyond those afforded by the Federal Constitution (People v Settles, 46 NY2d at 160; see People v Ramos, 99 NY2d 27, 32-33 [2002]; People v West, 81 NY2d 370, 373 [1993]; People v Cunningham, 49 NY2d 203, 207 [1980]; People v Hobson, 39 NY2d 479, 483-484 [1976]). In fact, as the right to counsel may well be the most basic constitutional right of all, this state has “consistently exercised the highest degree of vigilance in safeguarding the right of an accused to have the assistance of an attorney at every stage of the legal proceedings against him [or her]” (People v Cunningham, 49 NY2d at 207 [emphasis added]; see People v Ramos, 99 NY2d at 32-33; People v West, 81 NY2d at 373; People v Hodge, 53 NY2d 313, 317-318 [1981]). Effective assistance is “essential not only to insure the rights of the individual defendant but for the protection and well-being of society as well” and is “inviolable and fundamental to our form of justice,” which ideally seeks equal representation between the state and a criminal defendant (People v Settles, 46 NY2d at 161; see People v Hodge, 53 NY2d at 318).
When determining what constitutes effective representation, it has been held that the “most critical period” of the proceedings against defendants may well be “from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation [are] vitally important”; indeed, defendants are as much entitled to the aid of counsel during this period as they are at the trial itself (Powell v Alabama, 287 US at 57; see Michigan v Harvey, 494 US 344, 348 [1990]; Coleman v Alabama, 399 US at 7; Massiah v United States, 377 US 201, 205 [1964]; People v Tomaselli, 7 NY2d 350, 354 [1960]; People v McLaughlin, 291 NY 480, 482-483 [1944]; People ex rel. Burgess v Risley, 66 How Pr 67 [1883]). Toward that end, “the right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense” (People v Droz, 39 NY2d 457, 462 [1976]; see People v Cyrus, 48 AD3d 150, 154 [2007], lv denied 10 NY3d 763 [2008]; People v Fogle, 10 AD3d 618, 619 [2004]; People v Bussey, 6 AD3d 621, 623 [2004], lv denied 4 NY3d 828 [2005]; People v *94 Rojas, 213 AD2d 56, 67 [1995], lv denied 87 NY2d 907 [1995]; People ex rel. Burgess v Risley, 66 How Pr 67 [1883]). Importantly, it is now well settled that the denial of the effective assistance of counsel, whether at a preliminary stage or at the trial itself, is of constitutional dimension (see People v Stultz, 2 NY3d 277, 282-283 [2004]; People v Wicks, 76 NY2d 128, 132 [1990]; People v Hodge, 53 NY2d at 320; People v Droz, 39 NY2d at 459). Significantly, our Court of Appeals has held that the constitutional right to counsel at every stage of the proceedings is so fundamental that, even when a defendant is competently represented at trial, the deprivation of representation during preparation for trial can warrant the reversal of a conviction and dismissal of an indictment (see People v Hilliard, 73 NY2d 584, 586-587 [1989]).
In light of the foregoing, plaintiffs’ allegations—which include, among others, that they were not represented at arraignment which, in many cases, resulted in a denial of bail or a high bail being set causing extended pretrial detention;[1] that their rights to appear, and to an indictment, before a grand jury were waived by counsel without consultation; that they were denied the opportunity to meet and confer with counsel in any meaningful way; that counsel refused to accept telephone calls during the representation; that counsel failed to perform any independent investigation regarding plaintiffs’ cases; and that plaintiffs were not informed by counsel of the full consequences of their guilty pleas—set forth clear deficiencies that, without question, implicate plaintiffs’ right to counsel under our Federal and State Constitutions.
For example, as detailed in the complaint, plaintiff James Adams was arrested on July 31, 2007 and accused of stealing several sticks of deodorant from a drug store. He was charged with, among other things, robbery in the third degree and burglary in the third degree. As a result, his bail was set at $2,500, which he could not afford. After several adjournments and a court appearance at which his assigned counsel did not appear, Adams attempted to file his own pro se motion and even contacted the District Attorney directly to proffer his defense. Repeated efforts by Adams and his wife to contact his attorney by telephone failed—either the voice-mail box was full or requests for return calls were ignored. At a court appearance in October 2007, the court expressed concern that Adams had been overcharged and, *95 after reviewing the grand jury minutes on its own initiative, ordered his attorney to file a motion to dismiss the indictment, which apparently had not been done as of the commencement of this action. Adams lost his job as a result of his incarceration, and his wife, two daughters and granddaughter were evicted from their home. Similarly, plaintiff Lane Loyzelle was arrested in September 2007 and charged with petit larceny for allegedly stealing $20 from two acquaintances. He was not represented at arraignment and bail was set at $2,500, which he could not afford. Loyzelle met his attorney once, for five minutes, before an October 2007 court appearance in a holding area full of other inmates. By the time this action was commenced, Loyzelle had been incarcerated for six weeks, had lost his job as a result, and had not had any contact with his attorney for nearly a month.
Thus, in our view, it is not plaintiffs, but the majority, that misunderstand the dimensions of the constitutional right to counsel. With significant deficiencies alleged by plaintiffs, a justiciable cause of action has clearly been stated. Justiciability, in a general sense, refers “to matters resolvable by the judicial branch of government as opposed to the executive or legislative branches or their extensions” (Jiggetts v Grinker, 75 NY2d 411, 415 [1990]; see New York County Lawyers’ Assn. v State of New York, 294 AD2d 69, 72 [2002]). Indeed, as the majority aptly notes, “[t]he paramount concern is that the [J]udiciary not undertake tasks that the other branches are better suited to perform” (Klostermann v Cuomo, 61 NY2d 525, 535 [1984]; see Jones v Beame, 45 NY2d 402, 409 [1978]). While complex choices that involve selecting among competing priorities and the allocation of public funds are typically best left to the decision-making of the other coordinate branches of government, “it is nevertheless the responsibility of the courts to adjudicate contentions that actions taken by the Legislature . . . fail to conform to the mandates of the Constitutions” (Board of Educ., Levittown Union Free School Dist. v Nyquist, 57 NY2d 27, 39 [1982], appeal dismissed 459 US 1139 [1983]; see Campaign for Fiscal Equity v State of New York, 86 NY2d 307, 314-318 [1995], supra; New York County Lawyers’ Assn. v State of New York, 294 AD2d at 72-73; see also Duncan v State, 284 Mich App 246, 255-256, 774 NW2d 89, 98 [2009]). Indeed, claims of nonjusticiability are “particularly unconvincing when uttered in response to a claim that existing conditions violate an individual’s constitutional rights” (Klostermann v Cuomo, 61 NY2d at 537; see New York County
*96 Lawyers’ Assn. v State of New York, 294 AD2d at 72-73). As articulated by the court in Duncan v State (284 Mich App at 256, 774 NW2d at 98), a recent decision concerning the precise issues now before this Court:
“We cannot accept the proposition that the constitutional rights of our citizens, even those accused of crimes and too poor to afford counsel, are not deserving and worthy of any protection by the [J]udiciary in a situation where the executive and legislative branches fail to comply with constitutional mandates and abdicate their constitutional responsibilities, either intentionally or neglectfully. If not the courts, then whom.”
There is no dispute that both our Federal and State Constitutions guarantee the right to counsel to all criminal defendants where loss of liberty is at stake and, where a defendant is unable to retain an attorney, require that the state provide counsel (see Argersinger v Hamlin, 407 US 25, 37 [1972]; Gideon v Wainwright, 372 US at 344; Matter of Smiley, 36 NY2d 433, 437 [1975]; People v Witenski, 15 NY2d 392, 397 [1965]). And, the constitutional right to counsel is the right to the effective assistance of counsel (see Strickland v Washington, 466 US 668, 686 [1984]; People v Benevento, 91 NY2d 708, 711 [1998]). Plaintiffs in this action having alleged that defendant State of New York has failed its duty in this regard, in that the current state of the public defense system creates a severe and unacceptably high risk that indigent criminal defendants are being or will be deprived of their constitutional right to the effective assistance of counsel, the courts have the responsibility to examine the allegations and adjudicate the dispute (see Board of Educ., Levittown Union Free School Dist. v Nyquist, 57 NY2d at 39; Campaign for Fiscal Equity v State of New York, 86 NY2d at 314-318; New York County Lawyers’ Assn. v State of New York, 294 AD2d at 72-73). Justiciability of the instant claim is even more compelling given that the constitutional right at issue is so interwoven with, and necessarily implicates, the proper functioning of the court system itself. That is, the Judiciary has a heightened responsibility to act where, as here, the subject of the dispute involves “the operation and administration of the courts by the courts” (Bruno v Codd, 47 NY2d 582, 588 [1979]; accord New York County Lawyers’ Assn. v State of New York, 294 AD2d at 73) and implicates the ability of “the court system *97 [to] ensure that its processes do not cause systemic violations of constitutional guarantees” (New York County Lawyers’ Assn. v State of New York, 294 AD2d at 73).
Concerns about costs, fiscal impact and the difficulty courts may encounter in fashioning and then enforcing particularized remedies appropriate to repair unconstitutional action, while not to be ignored, cannot be sufficient to require us to turn a blind eye to constitutional compliance, despite the majority’s position to the contrary (see Board of Educ., Levittown Union Free School Dist. v Nyquist, 57 NY2d at 39; Duncan v State, 284 Mich App at 255-256, 774 NW2d at 98). To avoid deciding the instant dispute on that basis would wholly “ ‘undermine the function of the [J]udiciary as a coequal branch of government’ ” (Matter of Boung Jae Jang v Brown, 161 AD2d 49, 55 [1990], quoting Matter of Anderson v Krupsak, 40 NY2d 397, 404 [1976]).
Nor do we believe that plaintiffs’ claims are rendered nonjusticiable by virtue of the fact that prospective injury is alleged; “proof of a likelihood of the occurrence of a threatened deprivation of constitutional rights is sufficient to justify prospective or preventive remedies . . . without awaiting actual injury” (Matter of Swinton v Safir, 93 NY2d 758, 765-766 [1999], citing Luckey v Harris, 860 F2d 1012, 1017 [11th Cir 1988]; accord New York County Lawyer’s Assn. v State of New York, 294 AD2d at 74).[2] Accordingly, we would find that the present dispute is justiciable.
Further, we are unpersuaded by defendants’ argument and the majority’s position that an ultimate finding in favor of plaintiffs—that the systemic deficiencies in this state’s public defense system create a grave and unacceptably high risk that indigent defendants will not receive effective assistance—could successfully be used by any of the plaintiffs in a collateral or appellate attack to his or her individual conviction. In order to so *98 challenge their convictions, plaintiffs, like any criminal defendant, would have to demonstrate not only that counsels’ performance was deficient, but also that the actual representation they received prejudiced their cases (see Strickland v Washington, 466 US 668 [1984], supra) such that they were deprived of meaningful representation (see People v Benevento, 91 NY2d 708 [1998], supra). Moreover, we simply cannot agree that plaintiffs have adequate remedies at law in that they may challenge the effectiveness of counsel in the context of their individual criminal cases by way of a direct appeal, CPL article 440 motion or habeas corpus proceeding. Certainly, widespread and systemic instances of deficient performance caused by an ill-equipped assigned counsel system will not be cured through a case-by-case examination of individual criminal convictions (see New York County Lawyers’ Assn. v State of New York, 294 AD2d at 76). Also, such remedies would obviously be unavailable to those criminal defendants, including some of the named plaintiffs in this action, who, for example, did not have counsel during arraignment, bail hearings or other material stages of the proceedings, but who were ultimately acquitted or whose charges were eventually dismissed.[3] “The right to counsel must mean more than just the right to an outcome” (Duncan v State, 284 Mich App at 306, 774 NW2d at 126).
To the extent that the majority also takes the position that resolution of plaintiffs’ claims would interfere with the conduct of plaintiffs’ criminal trials, we fail to see how this provides a basis to dismiss plaintiffs’ claims at this juncture. As Supreme Court noted, the criminal actions of approximately half of the named plaintiffs had terminated as of the date of its August 2008 order, and the likelihood that the remaining plaintiffs’ criminal actions will remain active by the timé a trial is held in the instant action is extremely slim. Moreover, in the unlikely event that such is the case, any delay in the criminal action *99 could be curtailed by limitations on discovery and the admission of trial evidence in this action.
Finally, the majority’s “cursory search” of appellate history pertaining to reversals on grounds of ineffective assistance is simply irrelevant to the issues presented here. First, a finding of widespread reversals on ineffective assistance of counsel grounds, while arguably pertinent to whether plaintiffs can ultimately establish their claim, has no bearing on whether they have stated a cause of action for prospective relief based on a substantial and imminent threat of the deprivation of their constitutional rights as well as those of persons similarly situated. Moreover, the fundamental flaw in the majority’s and defendants’ position is that the standards set forth in Strickland v Washington (466 US 668 [1984], supra) and People v Benevento (91 NY2d 708 [1998], supra) for evaluating whether counsel’s performance was effective under the Federal and State Constitutions, respectively, are simply not applicable here. To be sure, in the context of a criminal appeal or CPL article 440 motion, where a criminal defendant is seeking the drastic remedy of vacating his or her conviction, it is entirely logical to require a showing of prejudice resulting from counsel’s deficient representation. Yet, it is neither logical nor workable to apply these standards to a civil claim where the allegations concern systemic instances of constitutionally inadequate representation and where the remedy sought is in the form of prospective relief seeking to prevent future harm.
Thus, in our view, because plaintiffs have asserted constitutional claims that render this matter justiciable, and plaintiffs need only allege facts that fit within a cognizable claim at this very early stage in the proceedings, we would affirm Supreme Court’s order denying the State’s motion to dismiss.
Lahtinen and McCarthy, JJ., concur with Kavanagh, J.; Peters, J.P., and Stein, J., dissent in a separate opinion by Peters, J.P.
Ordered that the order entered August 12, 2008 that denied defendant State of New York’s motion to dismiss the complaint is reversed, on the law, without costs, motion granted and complaint dismissed.
Ordered that the appeal from the order entered August 12, 2008 that denied defendant State of New York’s motion to declare the attorney-client privilege waived as to certain of the named plaintiffs is dismissed, as academic, without costs.

. We also note that failure to provide counsel during arraignment violates CPL 210.15.

. We cannot agree with the majority’s attempt to distinguish both Matter of Swinton v Safir (93 NY2d 758 [1999], supra) and New York County Lawyers ’ Assn. v State of New York (294 AD2d 69 [2002], supra) on the ground that, unlike here, the harm to be prevented was “ongoing, or was ‘inevitable.’ ” In the first place, the complaint unequivocally alleges that the constitutional rights of indigent defendants—as illustrated by the cases of the named plaintiffs—have already been, or are currently being, violated. Moreover, taking as true the allegations in the complaint, as we must, plaintiffs allege and specify gross deficiencies in this state’s indigent defense system that, if proven, would demonstrate an imminent and inevitable risk that the constitutional rights of those persons similarly situated will be violated.

. Plaintiff Jacqueline Winbrone, for example, was arrested in September 2007 and charged with possession of a loaded firearm in the second degree after a firearm was found in the family car. Winbrone was the sole caretaker of her husband, who needed transportation to dialysis treatment several times per week. After bail was set at $10,000, Winbrone unsuccessfully attempted to contact her attorney to seek a bail reduction in order to care for her husband. Days later, Winbrone’s husband died and, still unable to contact her attorney, she was unable to attend the funeral. In early November 2007, after writing to the court and contacting a prisoners’ rights organization, Winbrone was released on her own recognizance. Ultimately, the charge against Winbrone was dismissed.