OPINION OF THE COURT
 

 Levine, J.
 

 Petitioner, while a probationary police officer in the New York City Police Department, was terminated from that
 
 *762
 
 employment following an investigation by the Department’s Internal Affairs Bureau (IAB) of a confrontation he had with a woman at his apartment. Upon leaving the apartment, the woman, whom he had previously dated, made 911 calls for help and told the responding officers that petitioner had assaulted and attempted to rape her. She confirmed this in an interview with investigating officers but expressed a desire to drop all charges because she “felt sorry” for petitioner. Later, she retracted her accusation and denied that any incident occurred.
 

 Upon the completion of its investigation, IAB issued a report in which it concluded that the incident had in fact occurred as the woman originally related, and that petitioner had misrepresented the facts in responding to questions during the investigation. This was based not merely on an evaluation of the credibility of the woman’s initial statements and subsequent recantation. In addition, IAB identified conflicts between petitioner’s version and the observations of the officers who responded to the 911 call, and significant discrepancies between the sequence of events petitioner related and the automatically recorded times of the 911 calls.
 

 Formal disciplinary charges of attempted rape, assault and making false statements to IAB investigators were brought against petitioner. Additionally, IAB recommended his dismissal. That recommendation was approved at various levels of command, up to the Police Commissioner. Termination of petitioner’s probationary employment followed. Three weeks later, a record of the disciplinary charges and their resolution by his dismissal were placed in his personnel file.
 

 Petitioner then brought this CPLR article 78 proceeding in which he challenges the Police Department’s determination of his misconduct and discharge on the grounds that the Department’s action was arbitrary, capricious and racially discriminatory, requiring annulment and reinstatement as a police officer. In one additional cause of action, petitioner alleges that his personnel records contained the findings of misconduct and will be disclosed to prospective employers, entitling him to a name-clearing hearing. We granted petitioner leave to appeal from the Appellate Division’s affirmance (255 AD2d 193) of Supreme Court’s dismissal of the petition.
 

 Petitioner’s grounds for annulling the Police Department’s termination are without merit. He was a probationary police officer at the time of his dismissal. While in that status, he “may be dismissed for almost any reason, or for no reason at
 
 *763
 
 all”
 
 (Matter of Venes v Community School Bd. of Dist. 26,
 
 43 NY2d 520, 525). As a probationary employee, petitioner had no right to challenge the termination by way of a hearing or otherwise, absent a showing that he was dismissed in bad faith or for an improper or impermissible reason
 
 (see, Matter of York v McGuire,
 
 63 NY2d 760, 761;
 
 Matter of Anonymous v Codd,
 
 40 NY2d 860). Petitioner failed to demonstrate either.
 

 The Department was not compelled to accept the credibility of petitioner’s former girlfriend’s recantation. Moreover, the IAB’s conclusion that petitioner was dishonest in statements to police investigators was unrelated to her varying versions of the incident. Therefore, there was a basis for dismissal independent of the woman’s accusations and recantation. Likewise, petitioner failed to make any showing of racial discrimination because there was no proof of differential treatment for the same or similar misconduct.
 

 A more difficult question is posed by petitioner’s demand for a name-clearing hearing.
 
 *
 
 Petitioner has made at least a preliminary demonstration that his personnel file includes findings of attempted rape and assault as well as dishonesty to IAB investigators, resulting in his dismissal. Respondent’s answer “admits that petitioner’s personnel record indicates an investigative finding that petitioner
 
 made false statements
 
 and that there was sufficient evidence to substantiate the allegations of misconduct” (i.e., the previously described felony and prevarication charges) (emphasis supplied). These findings, of criminality and immoral and dishonest conduct, are stigmatizing in the constitutional sense because of their inevitable effect, if revealed, of foreclosing employment opportunities in petitioner’s chosen field of law enforcement
 
 (see, Board of Regents of State Colls. v Roth, supra,
 
 408 US, at 573). Certainly, petitioner’s personnel file contains far more serious charges than that of individual or isolated instances of bad judgment or incompetent performance of duties, correctable by learning from one’s mistakes, which are
 
 not
 
 “stigma[s] of constitutional proportions”
 
 (Matter of Petix v Connelie,
 
 47 NY2d 457, 460;
 
 see, Donato v Plainview-Old Bethpage Cent. School Dist,
 
 96 F3d 623, 630 [2d Cir]).
 

 
 *764
 
 Thus, petitioner has established “stigma plus” in this case— governmental defamatory action (if untrue) and, in conjunction therewith, loss of employment — constituting two of the necessary elements of a due process liberty interest entitling him to a name-clearing hearing (see,
 
 Paul v Davis,
 
 424 US 693, 708-709). Petitioner has also alleged that all of the charges of misconduct in his personnel file are false (see,
 
 Codd v Velger, supra,
 
 429 US, at 628). Hence, his entitlement to that hearing turns on whether he has satisfied the final element, dissemination of the stigmatizing material (see,
 
 Bishop v Wood,
 
 426 US 341, 349).
 

 Concededly, there has not yet been any public disclosure of the findings of petitioner’s misconduct contained in his file, outside the confines of the Police Department. Respondent contends that actual dissemination is essential to petitioner’s entitlement to a name-clearing hearing. Petitioner claims that it is sufficient that there is a likelihood that his file will be disclosed to prospective law enforcement employers.
 

 This is the first time we have been called upon squarely to decide whether actual dissemination is required to trigger the right to a name-clearing hearing, or whether proof of a
 
 likelihood
 
 of dissemination is sufficient. The Federal Circuit courts that have addressed the issue are almost equally divided. A bare majority hold that proof of a likelihood of dissemination suffices. “The purpose of the requirement [of a public dissemination] is to limit a constitutional claim to those instances where the stigmatizing charges made in the course of discharge have been or
 
 are likely to he
 
 disseminated widely enough to damage the discharged employee’s standing in the community or foreclose future job opportunities”
 
 (Brandt v Board of Coop. Educ. Servs.,
 
 820 F2d 41, 44 [2d Cir] [emphasis supplied];
 
 see, Ledford v Delancey,
 
 612 F2d 883, 886-887 [4th Cir];
 
 Rosenstein v City of Dallas,
 
 876 F2d 392, 396, n 6 [5th Cir];
 
 Buxton v City of Plant City,
 
 871 F2d 1037, 1045 [11th Cir]).
 

 Three Circuits have insisted upon actual public disclosure before a discharged employee’s liberty interest in a name-clearing hearing can be invoked
 
 (see, Ortega-Rosario v Alvarado-Ortiz,
 
 917 F2d 71, 74-75 [1st Cir];
 
 Copeland v Philadelphia Police Dept.,
 
 840 F2d 1139, 1148 [3d Cir];
 
 Olivieri v Rodriguez,
 
 122 F3d 406, 408 [7th Cir]). The rationale articulated for rejecting the due process right to a name-clearing hearing until actual dissemination is two-fold. First, these courts are apprehensive that disclosure will invariably be presumed because of the likelihood that a prospective employer will insist upon
 
 *765
 
 the applicant’s revelation of the stigmatizing circumstances of a discharge from former employment, which “would encourage [the dismissed employee] to apply for a job to every police force in the nation, in order to magnify his damages”
 
 (Olivieri v Rodriguez, supra,
 
 122 F3d, at 409). Second, there is a fear that a name-clearing hearing will become the rule in all cases, obviating the distinction between tenured and probationary public employment
 
 (id.).
 

 We conclude that, despite these apprehensions, where the discharged employee is seeking only expungement of stigmatizing material in a personnel file — not reinstatement or damages — a likelihood of dissemination is sufficient to trigger one’s right to a departmental name-clearing hearing. It is noteworthy that the
 
 Olivieri
 
 case and earlier Seventh Circuit precedents upon which it relied
 
 (see, Johnson v Martin,
 
 943 F2d 15;
 
 Ratliff v City of Milwaukee,
 
 795 F2d 612), as well as the cited First and Third Circuit holdings, all were suits for compensatory (and in some cases punitive) damages under 42 USC § 1983. Requiring proof of actual dissemination makes sense in that context. After all, the underlying liberty interest to be protected in these cases is freedom from governmental
 
 defamation
 
 injurious to one’s status or opportunity for future employment
 
 (see, Paul v Davis, supra,
 
 424 US, at 707-709;
 
 Board of Regents of State Colls, v Roth, supra,
 
 408 US, at 573-574). It is hornbook law that defamation is not actionable before there has been publication — meaning some dissemination — because until then no injury to reputation, giving rise to compensable damages, has actually occurred
 
 (see,
 
 Prosser and Keeton, Torts § 113, at 797 [5th ed]). By a parity of reasoning, the discharged public employee has not suffered any actual injury compensable in a section 1983 damages action, until actual dissemination.
 

 The foregoing analytical barrier to pre-dissemination compensatory relief does not apply, however, when, as here, the stigmatized former employee is seeking prospective or preventive relief — the opportunity for a hearing leading to the expungement of the potentially damaging material from a personnel file before dissemination. In that context, we agree with the Second, Fourth, Fifth and Eleventh Circuits that demonstrating a likelihood of dissemination is sufficient to establish entitlement to a departmental name-clearing hearing. In other contexts, proof of a likelihood of the occurrence of a threatened deprivation of constitutional rights is sufficient to justify prospective or preventive remedies under 42 USC
 
 *766
 
 § 1983, without awaiting actual injury
 
 (see, Luckey v Harris,
 
 860 F2d 1012, 1017 [11th Cir] [indigent defense services];
 
 see also, Farmer v Brennan,
 
 511 US 825, 845 [cruel and unusual punishment];
 
 Helling v McKinney,
 
 509 US 25, 33-34 [cruel and unusual punishment]). We see no reason why that standard should not also apply when there is proof of a threatened violation of a discharged public employee’s liberty interest in being free from governmental defamation harming his opportunity to obtain reemployment in a chosen field.
 

 We are unconvinced by the policy arguments expressed by the courts requiring actual dissemination. Contrary to the apprehensions of the Seventh Circuit, a conclusory claim that future employers will require the discharged employee to disclose all circumstances of the termination of prior employment is not a sufficient basis upon which the likelihood of the
 
 former employer’s
 
 disclosure of a stigmatizing file would be established. The risk of a discharged employee’s being forced to reveal potentially damaging information surrounding the loss of a prior job exists even when there are no stigmatizing materials in the personnel record, and is probably unavoidable. Nor are we confronted here with proof that petitioner has been forced by a prospective employer to consent to the disclosure of his file. Moreover, even when the necessary elements of a liberty interest in reputation are present, public agencies would not be required to hold name-clearing hearings for discharged at-will or probationary employees except upon demand, and can avoid hearings by removing the stigmatizing material from the employee’s personnel file
 
 (see, McCullough v Wyandanch Union Free School Dist.,
 
 187 F3d 272 [2d Cir]).
 

 Petitioner has alleged that the Department will disclose his personnel record to law enforcement agencies with whom he intends to seek employment. That averment has been placed in issue by respondent’s general denial. Significantly, the confidentiality generally accorded police personnel records is not extended to prosecutors or county, town or village attorneys “or any agency of government which requires the records * * * in the
 
 furtherance
 
 of their official functions” (Civil Rights Law § 50-a [4] [emphasis supplied]).
 

 Granting a name-clearing hearing on the basis of the likelihood of dissemination of stigmatizing material in a personnel file is consistent with our precedents. In
 
 Matter of Petix v Connelie
 
 (47 NY2d 457,
 
 supra),
 
 we acknowledged that actual dissemination may not be necessary in all cases, recognizing the possibility that “an entry in a personnel record may in some
 
 *767
 
 circumstances so stigmatize an individual as to require a hearing
 
 even though not immediately disseminated” (id.,
 
 at 460-461 [emphasis supplied]). In
 
 Matter of Lentlie v Egan
 
 (61 NY2d 874), this Court found insufficient proof of the dissemination element from “the mere fact that one officer within the agency in which petitioner was employed was familiar with some of the reasons for petitioner’s demotion” (61 NY2d, at 876). Although the dissent in
 
 Lentlie
 
 relied on allegations in the petition of dissemination “automatically” to State agencies
 
 (id.,
 
 at 876), as the Appellate Division’s memorandum makes clear, the proof Supreme Court relied upon only established “that future dissemination was more than likely because of knowledge within the agency” (94 AD2d 839, 841). The Appellate Division determined that Lentlie’s averment of wide availability of the charges in his personnel record was a “bare assertion”
 
 (id.,
 
 at 841). This Court was equally unpersuaded by petitioner’s “bare assertion.”
 

 Here, the courts below dismissed the petition without giving the parties an opportunity to submit competent evidence on the controverted allegations of likely dissemination to other law enforcement agencies. Consequently, petitioner’s cause of action for a name-clearing hearing should be remitted to Supreme Court for a further factual exploration of the likelihood of dissemination of petitioner’s personnel file, and any other issues pertinent to his entitlement to a name-clearing hearing, including the actual content of the file.
 

 Accordingly, the order of the Appellate Division should be modified, by remitting to Supreme Court for further proceedings in accordance with this opinion, and otherwise affirmed, without costs.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Order modified, etc.
 

 *
 

 The sole purpose of a name-clearing hearing is to afford the employee an opportunity to prove that the stigmatizing material in the personnel file is false (see,
 
 Codd v Velger,
 
 429 US 624, 627-628). The appropriate remedy is only expungement, not reinstatement (see,
 
 Board of Regents of State Colls. v Roth,
 
 408 US 564, 573, n 12).