OPINION OF THE COURT
Kavanagh, J.
Plaintiffs commenced this action against defendant State of New York[1] seeking a declaration that the State’s public defense system is systemically deficient and presents a grave and unacceptable risk that indigent criminal defendants are being or will be denied their constitutional right to meaningful and effective assistance of counsel. Plaintiffs also sought an injunction requiring defendants to provide a system that is consistent with those guarantees. Plaintiffs moved for a preliminary injunction and, thereafter, the State moved to dismiss the complaint claiming, among other things, that the complaint failed to state a cause of action. By order to show cause, the State also moved for a declaration that, for the purposes of the instant litigation, certain plaintiffs have waived their attorney-client privilege as to the matters presented in their respective affidavits in support of their motion for a preliminary injunction. In separate orders, Supreme Court denied the motion to dismiss on the condition that plaintiffs file a second amended complaint adding the coun *86 ties as defendants and denied the State’s motion to deem certain plaintiffs’ attorney-client privileges waived. Defendants now appeal from both orders.
The critical issue presented by this appeal is whether plaintiffs—more than 20 indigent persons who were or currently are being represented by assigned counsel in criminal actions—have stated a cause of action that is justiciable. Of course, where a motion to dismiss a complaint for failure to state a cause of action is made pursuant to CPLR 3211, “the pleading is to be afforded a liberal construction” (Leon v Martinez, 84 NY2d 83, 87 [1994]), and the court must “accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory” (id. at 87-88; accord Matter of Maron v Silver, 58 AD3d 102, 109 [2008]; see Rubinstein v Salomon, 46 AD3d 536, 538 [2007]; Matter of Niagara Mohawk Power Corp. v State of New York, 300 AD2d 949, 952 [2002]). Even applying such a rigorous standard to the State’s motion, plaintiffs have failed to state a cause of action that is justiciable and, therefore, Supreme Court’s order denying the motion should be reversed and plaintiffs’ complaint should be dismissed.
While plaintiffs in their complaint raise the specter that individual constitutional rights will be routinely violated unless systemic reforms are immediately implemented in the way legal services are provided to indigent criminal defendants in this state, they do not claim—as the dissent acknowledges—“that the actual representation they received prejudiced their cases.” In fact, while this state has provided indigent legal services in one form or another for more than 40 years, plaintiffs do not allege, nor do they identify, any relevant appellate history that supports their claim that indigent criminal defendants have been systemically denied their constitutional right to counsel by the way these services have been delivered.[2] The reality is that when plaintiffs’ claim is stripped of its constitutional veneer, it *87 is not about indigent criminal defendants being denied their constitutional right to counsel but, instead, it is simply a general complaint as to the quality of legal services offered to indigent criminal defendants in this state. Reduced to its essential terms, plaintiffs’ complaint seeks to establish that “deficiencies” exist in the quality of these legal services but, at the same time, fails to show how these “deficiencies” have resulted in a denial of a defendant’s right to counsel in their criminal prosecution and how such “deficiencies” had served to affect the outcome of any particular case. In fact, these “deficiencies” have more to do with how these programs are funded and administered than how individuals have been deprived of the meaningful assistance of counsel in defending against criminal charges pending against them. In our view, any decisions to address those “deficiencies” should be made by the executive and legislative branches of government, and not by the Judiciary.
Initially, we note that plaintiffs’ claim is based on a fundamental misunderstanding of the constitutional dimensions of a defendant’s right to counsel in a criminal action. The Sixth Amendment to the US Constitution insures, among other things, that each person charged with the commission of a crime has the right to a speedy and public trial, an impartial jury and the “Assistance of Counsel for his [or her] defence.” As interpreted under both the US and NY Constitutions, this guarantee has been found to be synonymous with the right to the effective assistance of counsel (see Custis v United States, 511 US 485, 507 [1994]; Strickland v Washington, 466 US 668, 686 [1984]; Schulz v Marshall, 528 F Supp 2d 77, 91 [ED NY 2007]), and is violated not whenever there is a flaw or “deficiency” in the quality of the legal representation provided indigent criminal defendants, but when that representation, taken as a whole, is so inadequate as to “undermine[ ] the proper functioning of the adversarial process [so] that the trial cannot be relied on as having produced a just result” (Strickland v Washington, 466 US at 686; see Washington v Hofbauer, 228 F3d 689, 702 [6th Cir 2000]; accord Girts v Yanai, 501 F3d 743, 756-757 [6th Cir 2007], cert denied 555 US —, 129 S Ct 92 [2008]). While the tests employed under both federal and state law to measure the effectiveness of counsel are to some extent different, neither recognizes the right for its own sake but, rather, for the effect it has in insuring that a defendant charged with a crime has been treated fairly and the criminal action has produced a fair result *88 (see People v Schulz, 4 NY3d 521, 530-531 [2005]; People v Henry, 95 NY2d 563, 566 [2000]; People v Benevento, 91 NY2d 708, 711 [1998]; People v Powers, 262 AD2d 713, 716 [1999], lv denied 93 NY2d 1005 [1999]). It is not, as plaintiffs allege, a general right that can be asserted in a civil action to support a claim that seeks to compel other branches of government to allocate additional public resources and intensify administrative oversight of programs that provide indigent criminal defendants with legal assistance in their criminal prosecutions.
How these programs are funded and administered does not necessarily implicate the constitutional right to counsel and, as such, the claims made in this action on behalf of these plaintiffs are not justiciable. Justiciability involves the constitutional separation of powers and determines what matters should be resolved by the Judiciary, as opposed to the executive or legislative branches of government (see Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d 233, 238-239 [1984]; see also Jiggetts v Grinker, 75 NY2d 411, 415-416 [1990]). With that principle in mind, it must be remembered that complex choices that entail selecting among competing priorities and allocating finite resources are matters best left to the sound exercise of the discretion of the coordinate branches of government and are not the type that the Judiciary, to be frank, is designed or well suited-to make (see Jiggetts v Grinker, 75 NY2d at 415-416; see also Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d at 239; Jones v Beame, 45 NY2d 402, 407 [1978]; New York Civ. Liberties Union v State of New York, 3 AD3d 811, 814 [2004], affd 4 NY3d 175 [2005]). Yet, it is precisely those types of choices that plaintiffs seek to have the Judiciary render in this action.
The true nature of the relief plaintiffs seek is spelled out in their motion for a preliminary injunction.[3] Specifically, they asked that an order be issued that directs the State to:
“1. Implement standards and procedures to ensure *89 that attorneys appointed to represent indigent criminal defendants have sufficient qualifications and training;
“2. Establish caseload and workload limits to ensure that public defense attorneys have adequate time to devote to each client’s case;
“3. Guarantee that every eligible indigent criminal defendant is assigned a public defense attorney within 24 hours of arrest who is present at every critical proceeding and consults with each client in advance of any critical proceeding to ensure that the attorney is sufficiently prepared for any such proceeding;
“4. Ensure that investigators and experts are available to every public defense attorney for every case in which an attorney deems that investigative or expert services would be useful to the defense; and
“5. Establish uniform written standards and procedures for determining eligibility for the assignment of a public defense attorney.”
In effect, plaintiffs seek an order that would “reorder priorities, allocate the limited resources available, and in effect direct how” these programs should be administered (Jones v Beame, 45 NY2d at 407)—all of which are actions that, if implemented, would inevitably involve the Judiciary in “ ‘the management and operation of public enterprises’ ” (id., quoting Matter of Abrams v New York City Tr. Auth., 39 NY2d 990, 992 [1976]). While these requests are all made under the color of constitutional reform, none, when viewed in the proper context, even attempts to address the question as to whether an individual’s Sixth Amendment right to counsel has been violated in the underlying criminal action.
There can be little doubt that what plaintiffs seek in this action—a massive overhaul of this state’s public defense system— has obvious and ominous implications for the constitutional principle of separation of powers. Their claim, if granted, necessarily involves the judicial assumption of traditional legislative prerogatives. While not unprecedented, the Judiciary should only assume such powers if the facts submitted in support of the claim document that the need for the relief requested is both manifest and emergent (see Jiggetts v Grinker, 75 NY2d at 415; Matter of New York State Inspection, Sec. & Law Enforce *90 ment Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d at 240-241; compare Matter of Swinton v Safir, 93 NY2d 758, 763 [1999]).[4] Plaintiffs have simply not made such a showing in this action. They ignore any relevant appellate history and base their request for this extraordinary relief entirely upon a prediction that if these reforms are not immediately adopted, a high risk exists that indigent criminal defendants will be deprived of their constitutional right to counsel in the future. Such speculation cannot be the vehicle upon which to base the grant of such extraordinary relief.[5]
In support of their claims, plaintiffs rely on the Kaye Commission Report and its conclusion that “nothing short of major, far-reaching, reform can ensure that New York meets its constitutional and statutory obligations to provide quality representation to every indigent person accused of a crime or other offense.” While factual assertions in plaintiffs’ complaint must, for purposes of this motion, be accepted as true, and plaintiffs are entitled to the benefit of every possible inference that reasonably flows from such established facts, legal conclusions, even those set forth in this report, are not afforded the same presumption (see Fernicola v New York State Ins. Fund, 293 AD2d 844, 844 [2002]; McNeary v Niagara Mohawk Power Corp., 286 AD2d 522, 523-524 [2001]). Further, it seems to be somewhat ironic that plaintiffs rely so heavily on a document that was obviously prepared as an impetus for legislative reform of New York’s assigned counsel system.
Finally, there can be no doubt that this action will, if allowed to continue, have an impact on related criminal actions. While plaintiffs assert that this action will not have any effect on their *91 criminal prosecutions, the fact is that plaintiffs, in both their original and amended complaints, seek a declaration that in these criminal actions their “rights are being violated.” Such a claim, to be proven, will necessarily involve some of the same issues that undoubtedly will be raised in the underlying criminal actions and will inevitably result in a collateral review of assigned counsels’ performances in some, if not all, of those actions. In fact, plaintiffs, in support of the relief they seek in this action, have submitted 23 affidavits that detail the deficiencies they claim occurred in their assigned counsels’ performances in the underlying criminal actions. The content of these affidavits makes the very same claims that would be made in a criminal action to support a claim that they have not received meaningful assistance from counsel and have been denied their rights under the Sixth Amendment. Among other things, these affidavits claim that the indigent criminal defendants had little or no meaningful contact with their assigned counsel, counsel performed an inadequate investigation and was not prepared to participate in any of the criminal actions, failed to make motions, did not fully explain the ramifications of testifying, pressured defendants into entering pleas and/or waiving their rights to testify and simply performed poorly at trial. Without exception, each of these claims should be raised and resolved in the action where the violation of the constitutional right is alleged to have occurred.
In that regard, sound public policy requires that severe restrictions be placed upon the ability of criminal defendants to litigate claims in a civil action that can be, and ought to be, resolved in the criminal actions (see Matter of Veloz v Rothwax, 65 NY2d 902, 904 [1985]; Matter of Morgenthau v Erlbaum, 59 NY2d 143, 149-152 [1983], cert denied 464 US 993 [1983]). No showing has been made here that the remedies traditionally available in criminal actions—applications pursuant to CPL article 440, direct appeals from a conviction and writs of habeus corpus—cannot effectively address any claim that these plaintiffs have been denied their constitutional right to counsel in the underlying criminal actions (see People v Smith, 63 NY2d 41, 69 [1984], cert denied 469 US 1227 [1985]; People v Tippins, 173 AD2d 512, 513-515 [1991], lv denied 78 NY2d 1015 [1991], cert denied 502 US 1064 [1992]; see also Strickland v Washington, 466 US at 686-693). And it is inconceivable that if plaintiffs prevail in this action and obtain a declaration that their “rights are being violated” by the quality of legal representation they *92 are receiving in their criminal prosecutions, they will not use such a ruling to challenge any convictions that may have been obtained. Simply stated, it is within the context of the criminal action that the Sixth Amendment right to counsel exists and that any violation of that right will occur. It necessarily follows that it is within that action that any violation of such a right ought to be established and the appropriate remedy needed to address that violation ought to be pursued.
As a result of our decision, we need not address the issues raised by Supreme Court’s denial of the State’s motion to declare the attorney-client privilege waived as to certain of the named plaintiffs, and the appeal therefrom is dismissed as academic.

. Plaintiffs subsequently served an amended complaint naming defendant Governor David Paterson as an additional defendant.

. Indeed, a cursory search of Lexis and Westlaw reflects that ineffective assistance of counsel has rarely been raised as an issue in the approximate 900 appeals from criminal convictions taken in the five relevant counties over the past three years. In approximately 140 appeals where it has been raised as an issue, only two convictions were reversed on that ground. Contrary to the dissent’s conclusion that these results are irrelevant, this appellate record—or lack thereof—clearly points out a lack of support for plaintiffs’ claim that indigent criminal defendants in these five counties are being systemically denied their Sixth Amendment rights.

. While plaintiffs rely on the report of former Chief Judge Kaye’s Commission on the Future of Indigent Defense Services (hereinafter the Kaye Commission Report, available at http://www.courts.state.ny.us/ip/ indigentdefense-commission/IndigentDefenseCommission_report06.pdf), they deny that they are seeking in this action the implementation of the report’s principal recommendation that a “statewide defender office” be created to provide indigent legal services.

. While there are obvious legislative avenues that could have been pursued by plaintiffs, there is no evidence in the record that plaintiffs explored these alternatives.

. The authority relied upon by the dissent involved claims that, as pleaded, allege that the harm to he prevented either had already occurred (see Klostermann v Cuomo, 61 NY2d 525, 531 [1984]), was ongoing, or was “inevitable” (Matter of Swinton v Safir, 93 NY2d at 763). In New York County Lawyers’ Assn. v State of New York (294 AD2d 69 [2002]), the Court observed that the “action was commenced in response to the widely recognized crisis in New York’s assigned counsel system” and relied upon a factual finding contained in an investigative report to the effect that inadequate compensation rates had actually caused a “drastic drop” in the number of attorneys willing to represent indigent defendants (id. at 71). It further observed that this reduction in the number of attorneys willing to participate in the assigned counsel system in turn resulted in “major disruptions in the handling of criminal prosecutions and Family Court cases” (id.).