Allen v City of New York (2025 NY Slip Op 25155)

[*1]

Allen v City of New York

2025 NY Slip Op 25155

Decided on July 3, 2025

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on July 3, 2025
Supreme Court, New York County

Jarrett Allen, Plaintiff,

against
The City of New York, THOMAS G. DONLON, JUDITH R. HARRISON, Defendants.

Index No. 452962/2024

Counsel for the defendants, the City of New York and senior NYPD officials, was Assistant Corporation Counsel Belina Anderson of the New York City Law Department.
The plaintiff was represented by Legal Aid Society attorneys Elise Smith, Meghna Philp, Philip Desgranges, and William Lesman.

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 21, 22, 23, 35, 37, 38, 39, 40, 56, 57, 58 were read on this motion to/for ORDER MAINTAIN CLASS ACTION.
The following e-filed documents, listed by NYSCEF document number (Motion 002) 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 59 were read on this motion to/for DISMISSAL.
Upon the foregoing documents, Plaintiff Jarrett Allen ("Plaintiff") moves for an order certifying the putative class (Motion Seq. 001). Defendants the City of New York, Jessica Tisch, and Judith R. Harrison (collectively, the "City") oppose and cross-move to stay the action pending determination on the City's separately filed motion to dismiss the complaint (Motion Seq. 002). Plaintiff opposes the motion to dismiss and cross-moves to convert the motion to a motion for summary judgment and moves for summary judgment on Plaintiff's claims. For the reasons set forth herein, the motion to dismiss is granted and all other motions are denied.
BACKGROUND
In this proposed class action, Plaintiff seeks a declaratory judgment and permanent injunction against the New York City Police Department ("NYPD") on behalf of himself and all others similarly situated. The proposed class consists of all people who are or will be handcuffed [*2]by the NYPD at their criminal court arraignment in New York City based on the NYPD's arraignment restraint policy (the "Policy"). The Policy is set forth in an NYPD document titled "Commanding Officer's Memo Criminal Justice Bureau," which bears the subject "Prisoner Restrains at Court Arraignments" (NYSCEF Doc No. 9). The stated purpose of the Policy is as follows:
Purpose: To guide members of service (MOS) on the use of prisoner restraints at court arraignments. Pursuant to Patrol Guide 210-01, Department policy provides that prisoners should be handcuffed with their hands behind their back, when practical. MOS may exercise discretion to apply or not to apply restraints at arraignment, depending on individual circumstances presented, including safety and/or security concerns.
(id. at 1). The Policy describes "Court Arraignments" as "Official court proceedings; the first time a defendant/prisoner appears in front of a judge after an arrest. At court arraignment, the defendant/prisoner is told what the charges are against them and what their rights are" (id.). The Policy states, in bold letters, that 
HANDCUFFS SHOULD ONLY BE REMOVED AT OR AFTER THE MOMENT A PRISONER APPEARS IN PERSON BEFORE THE JUDGE AND IS PRESENT AT THE ARRAIGNMENT TABLE/PODIUM, ABSENT EXCEPTIONAL CIRCUMSTANCES" (id.).
The Policy lists thirteen "Safety and Security Factors" that MOS may consider when exercising discretion regarding handcuffing, but emphasizes that, absent exceptional circumstances, "[p]risoners should always be handcuffed when moved within the detention areas," and that MOS may only exercise discretion "to remove handcuffs or keep them on during the court arraignment" once the criminal defendant reaches "the arraignment table/podium to appear before the judge/court" (id.). Finally, the Policy lists six examples of arraignment scenarios and further instructions on proper application of the Policy (id. at 2).
Plaintiff alleges in the complaint that the Policy "is to handcuff each person's wrists behind their back when officers escort them to arraignment, from the moment the officers and the accused person enter the courtroom until they reach the arraignment podium or table before the judge . . . and to keep nearly all people handcuffed for the duration of the arraignment proceeding" (id. ¶ 21). The complaint further alleges that, in practice, this policy results in "near-universal handcuffing of people throughout their arraignments" (NYSCEF Doc No. 1, complaint ¶ 31). Plaintiff asserts that the NYPD's failure to provide any individualized, on-the-record rationale to the court for keeping someone handcuffed throughout their arraignment or to obtain the court's approval to keep them handcuffed violates the due process rights of every person arraigned on criminal charges in New York City (id. ¶¶ 8, 29). The complaint interposes a single cause of action for violation of due process rights under Article 1, § 6 of the New York State Constitution.
Plaintiff's status as proposed class representative stems from his own arrest by the NYPD on October 30, 2024 (NYSCEF Doc No. 1, complaint ¶ 50). After he was arrested, Plaintiff was transported by NYPD officers to New York County Criminal Court, where he was arraigned the next day. While waiting for his arraignment to begin, counsel commenced this action on his behalf by filing a summons and complaint on the court's electronic filing system at 4:55 p.m. (NYSCEF Doc No. 1, Confirmation Notice). Plaintiff alleges in the complaint that he "is awaiting arraignment where," due to NYPD policy, "he will imminently be escorted into the [*3]courtroom in handcuffs and appear handcuffed in front of the judge at the arraignment podium or table" (id. ¶ 9). With respect to his injuries, Plaintiff alleges that being handcuffed was humiliating, hurt his wrists, and "felt like a show" (NYSCEF Doc No. 1, complaint ¶¶ 54, 60; NYSCEF Doc No. 44, Allen affirmation ¶ 4).
Plaintiff's arraignment was held shortly after the complaint was filed (NYSCEF Doc No. 43, statement of facts ¶ 33). Plaintiff was escorted from the holding area in the public area of the courtroom and to the podium in front of a criminal court judge with his hands cuffed behind his back (id. ¶ 33). He remained handcuffed throughout the proceeding (id. ¶ 35). The New York County District Attorney made an offer to resolve all charges with a plea to one count of disorderly conduct, upon completion of three sessions of a community-based diversion program called Manhattan Justice Opportunities (id. ¶ 36). He accepted and entered a plea (id.). There is no indication that Plaintiff or his counsel requested that the court order the NYPD to remove the handcuffs at any time during the arraignment proceeding.
On November 8, 2024, Plaintiff moved to certify the putative class certification pursuant to CPLR Article 9 (NYSCEF Doc No. 6). On February 5, 2025, the City filed the instant pre-answer motion to dismiss and separately filed an opposition and cross-motion to Plaintiff's motion, seeking a stay of the motion for class certification pending a determination on the motion to dismiss (NYSCEF Doc No. 26, 37). Plaintiff opposes the motion to dismiss and cross-moves pursuant to CPLR § 3211 (c) to convert the motion to a motion for summary judgment, where they seek an order granting summary judgment in Plaintiff's favor, as well as summary judgment in favor of the putative class upon resolution of the motion for class certification (NYSCEF Doc No. 41, notice of cross-motion).

ARGUMENTS
In the motion for class certification, Plaintiff argues that the putative class should be certified because the CPLR Article 9 prerequisites of numerosity, commonality, typicality, adequacy, and superiority are satisfied. In the opposition and cross-motion, the City argues that Plaintiff's motion for class certification was automatically stayed by virtue of their motion to dismiss, or in the alternative, that the court should grant a stay as proper and just because a motion for class certification is fact intensive and requires discovery as well as an analysis of the facts and issues.
The City separately moves to dismiss the complaint pursuant to CPLR §§ 3211 (a)(2), (7), and (10). The City first argues that Plaintiff's claims are not ripe and Plaintiff lacks standing to challenge the Policy because Plaintiff's complaint was filed before his arraignment, in anticipation of the Policy being applied to him. Plaintiff contends that the complaint alleges only predictions of harm and that a constitutional injury does not mature into a justiciable controversy until the plaintiff "receives direct, definitive notice that the defendant is repudiating his or her rights" (NYSCEF Doc No. 32, plaintiff's mem in support at 9-11). The City further argues that the complaint should be dismissed because Plaintiff failed the Office of Court Administration ("OCA") as a necessary party in this action, that the action should have been brought as an Article 78 proceeding, and that it is time-barred because it was filed after the four-month statute of limitations. The City contends that the even if these procedural defects were resolved, the complaint fails to state a cause of action under Article 1 § 6 of the New York State Constitution because a criminal defendant does not have a constitutional right to be free of restraints at [*4]arraignment and because Plaintiff failed to allege that the jurist actually saw the handcuffs during Plaintiff's arraignment, which is an essential element of the claim. Finally, the City argues that class certification is premature and unnecessary due to the "government operations" doctrine.
Plaintiff opposes the City's motion to dismiss and cross-moves to convert the motion to a motion for summary judgment and for summary judgment on his claims and those of the class. In support of the motion for summary judgment, Plaintiff argues that conversion is appropriate because the case presents only a purely legal question that the court can resolve on summary judgment, and that Plaintiff is entitled to summary judgment because the use of routine visible restraints absent case specific, on the record findings violates the due process rights of every criminal defendant brought for arraignment in New York City (NYSCEF Doc No. 42, plaintiff's mem in support at 6-13). Plaintiff argues that the relation back and mootness exception doctrines resolve any questions of ripeness and standing (id. at 8-12). Finally, Plaintiff contends that he is not required to bring this action under Article 78 and that CPLR § 103(c) forbids dismissal for filing an action under the wrong form (id. at 13-15).

DISCUSSION
It is incumbent on the court to first consider the threshold issues raised by the parties. As an initial matter, the court declines to convert the pending motion to dismiss to a motion for summary judgment. Generally, motions for summary judgment are not permitted until issue has been joined (CPLR § 3212 [a]). However, CPLR § 3211 (c) authorizes the court to treat a motion to dismiss as a motion for summary judgment "after adequate notice to the parties." Conversion is inappropriate where a motion for summary judgment would be premature (Valentine Transit, Inc. v Kernizan, 191 AD2d 159, 161 [1st Dept 1993]). Conversion is appropriate only where the parties' evidentiary submissions clearly indicate that they "deliberately charted a summary judgment course" (Martinez v JRL Food Corp., 194 AD3d 488, 489 [1st Dept 2021]). Whether conversion is appropriate is left to the sound discretion of the trial court (id.). Conversion is not appropriate here because the notice requirement has not been satisfied and because the parties' submissions do not evidence that they "deliberately charted a summary judgment course." On the contrary, the City's objections at oral argument and expressed in its written submissions demonstrate that the parties were not charting such a course (Wadiak v Pond Mgmt., LLC, 101 AD3d 474, 474 [1st Dept 2012] ["Plaintiff's counsel's objection at oral argument to converting defendants' motion is a significant indication that the parties were not charting such a course"]).
Moreover, the factual allegations as pled do not establish that the cause of action for declaratory relief is ripe and that Plaintiff has standing to bring this action. "A cause of action for declaratory relief accrues when there is a bona fide, justiciable controversy between the parties" (Zwarycz v Marnia Const., Inc., 102 AD3d 774, 776 [2d Dept 2013]). "A dispute matures into a justiciable controversy when a plaintiff receives direct, definitive notice that the defendant is repudiating [their] rights" (id.).
The doctrine of standing is an element of the larger question of justiciability and is designed to ensure that a party seeking relief has a sufficiently cognizable stake in the outcome so as to present a court with a dispute that is capable of judicial resolution" (Sec. Pac. Nat. Bank v Evans, 31 AD3d 278, 279 [1st Dept 2006]). "[A] court has no inherent power to right a wrong unless thereby the civil, property or personal rights of the plaintiff in the action or the petitioner in the proceeding are affected" (Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 50 [2019], [*5]citing Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772 [1991]). The most fundamental requirement to establish standing is that a plaintiff has suffered an "injury in fact" (Society of Plastics, 77 NY2d at 772 ["'injury in fact' has become the touchstone during recent decades"]). "The existence of an injury in fact—an actual legal stake in the matter being adjudicated—ensures that the party seeking review has some concrete interest in prosecuting the action which casts the dispute in a form traditionally capable of judicial resolution" (id. [internal quotation omitted]). Generally, "[a] threat of future harm is insufficient to impose liability against a defendant in a tort context" (Caronia v Philip Morris USA, Inc., 22 NY3d 439, 446 [2013]).
Although the Court of Appeals has acknowledged that in some contexts, "proof of a likelihood of the occurrence of a threatened deprivation of constitutional rights is sufficient to justify prospective or preventive remedies . . . without awaiting actual injury" (Swinton v Safir, 93 NY2d 758, 765-766 [1999]), such cases are extraordinarily rare and typically arise in circumstances where a defendant has already undertaken an allegedly violative act, but the resultant harm has yet to occur (see Swinton v Safir, 93 NY2d 758 [stigmatizing material added to employees personnel file, with a likelihood of dissemination to future employers]; Police Benev. Ass'n of New York State Troopers, Inc. v Div. of New York State Police, 29 AD3d 68 [3d Dept 2006] [State Troopers had standing to maintain a declaratory judgment action challenging the orders of their superiors directing them not to appear in response to subpoenas issued by local courts for certain pretrial proceedings, even though they had not yet been held in contempt]), or where statutory goals explicitly support prospective relief (Lino v City of New York, 101 AD3d 552, 556 [2012] [police department's failure to seal records as require by the Criminal Procedure Law put plaintiffs at imminent risk that their records would be disclosed]).
Plaintiff's complaint comes before the court from the unusual circumstance of having been filed while he was "awaiting arraignment in New York County Criminal Court," where he alleges he "will be imminently be escorted into the courtroom in handcuffs and appear handcuffed in front of the judge at the arraignment podium or table" (NYSCEF Doc No. 1, complaint ¶ 9). In contrast to the examples cited above, the risk of potential harm alleged by Plaintiff relies entirely on a prediction regarding whether and how the NYPD's Policy would be applied to him at arraignment. Furthermore, the scenario described by Plaintiff is not one where he could benefit from a prospective or preventative remedy because the complaint was filed five minutes before the close of the court's business hours and the arraignment was completed before his case was assigned to a jurist. Therefore, as pled, Plaintiff's claims are not ripe and he lacks standing under either the "injury in fact" standard or the exception suggested by the Court in Swinton v. Safir. Given that Plaintiff ultimately remained handcuffed at arraignment, these defects could potentially be resolved by amendment, but Plaintiff has not moved to amend the complaint. Nevertheless, this does preclude conversion to a motion for summary judgment.
Assuming, arguendo, that the court were to consider the additional facts provided by the parties regarding Plaintiff's arraignment, the complaint fails to state a cause of action. On a motion to dismiss brought under CPLR §3211, the court must also "accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994][citations omitted]). Ambiguous allegations must be resolved in the plaintiff's favor (see JF Capital Advisors, LLC v Lightstone Group, LLC, 25 NY3d 759, 764 [2015]). "The motion must be denied if from the pleadings' four corners factual [*6]allegations are discerned which taken together manifest any cause of action cognizable at law" (511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002] [internal citations omitted]). However, a pleading consisting of "bare legal conclusions" is insufficient to defeat a motion to dismiss (Leder v Spiegel, 31 AD3d 266, 267 [1st Dept 2006], affd 9 NY3d 836 [2007], cert denied 552 US 1257 [2008]) and "the court is not required to accept factual allegations that are plainly contradicted by the documentary evidence or legal conclusions that are unsupportable based upon the undisputed facts" (Robinson v Robinson, 303 AD2d 234, 235 [1st Dept 2003]).
In Deck v Missouri, the United States Supreme Court held that "the Fifth and Fourteenth Amendments [to the United States Constitution] prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial" (544 US 622, 624). The Court then considered whether this rule applied to the penalty phase of a capital case and what procedural steps a trail court must take prior to ordering restraint in order to ensure that the criminal defendant is afforded due process (id. at 629). The court considered "three fundamental legal principles," including the presumption of innocence, the defendant's right to a meaningful defense, and maintaining a dignified judicial process (id. at 632). The Court concluded in the affirmative, but qualified that the constitutional requirement "is not absolute," and "permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling" (id. at 634).
The New York State Court of Appeals later confirmed that a criminal defendant during a jury trial "has the right to be free of visible shackles, unless there has been a case-specific, on-the-record finding of necessity" under both federal and New York state constitutional law, but that the court's failure to articulate a specific reason on the record constitutes a harmless evidentiary error "when, in light of the totality of the evidence, there is no reasonable possibility that the error affected the jury's verdict" (People v Clyde, 18 NY3d 145, 153-153 [2011] ["Consequently, the evidentiary error was harmless."]). After Clyde, the Court of Appeals reiterated in People v. Best that "a trial court that restrains a defendant during criminal proceedings must state a particularized reason for doing so on the record," but again affirmed that failure to do so constitutes a harmless constitutional error "where evidence of guilt is overwhelming and there is no reasonable possibility that it affected the outcome of the trial" (People v Best, 19 NY3d 739, 744 [2012]). The Court also held that these principles apply "with equal force to nonjury trials" (id. at 742).
Following Clyde and Best, New York courts have held that the right to an individualized court determination regarding restraint is implicated during other guilt phases of a criminal prosecution, including when a criminal defendant testifies before a grand jury (People v Cain, 209 AD3d 124 [3d Dept 2022]), during reading of the verdict and polling of jurors (People v Sanders, 39 NY3d 216 [2023]), and during post-conviction hearings (People v Campbell, 106 AD3d 1507 [4th Dept 2013]), and probation revocation hearings (People v Hoebich, 42 Misc 3d 128(A) [App Term, 2d Dept, 9th & 10th Jud Dists 2013]). Courts are divided regarding whether it extends to pre-trial suppression hearings (see People v Goldston, 126 AD3d 1175, 1178 [3d Dept 2015] ["Although this prohibition has been extended to bench trials [], we discern no basis upon which to afford a criminal defendant the same protection in the context of a pretrial hearing"]; People v Ashline, 124 AD3d 1258, 1260 [4th Dept 2015] [Best standard applied to pre-trial suppression hearing, but failure to state a particularized reason for denying defendant's [*7]request to remove handcuffs was harmless error because the it "did not contribute to the court's decision on the suppression issue"]; see also People v Gamble, 137 AD3d 1053, 1055 [2d Dept 2016] ["Assuming, without deciding, that the right to be free of restraints absent a finding of necessity [] applies, in some fashion, to a pretrial hearing, we discern no reversible error on the part of the hearing court."]).
Despite this division, every stage of prosecution where New York courts have held that Best is implicated include, at a minimum, a factfinding hearing. This is not coincidental or arbitrary. The presumption of innocence is, foundationally, evidence in favor of the accused (Coffin v United States, 156 US 432, 460 [1895] ["Concluding, then, that the presumption of innocence is evidence in favor of the accused, introduced by the law in his behalf"]; see also Deck v Missouri, 544 US at 630, citing to Coffin, 156 US at 453). Visible shackling undermines the presumption of innocence because it "suggests to the jury that the justice system itself sees a need to separate a defendant from the community at large" (Deck v Missouri, 544 US at 630). Thus, when a criminal defendant is restrained in view of the factfinder, it does harm to the evidence in favor of the accused. Thus, the court's failure to articulate a reason for the restraint is an evidentiary error (People v Clyde, 18 NY3d at 153-153 ["Here, defendant's shackling during trial was harmless, as was an evidentiary error committed by the trial court"]; People v Best, 19 NY3d at 744 ["A constitutional error may be harmless where evidence of guilt is overwhelming and there is no reasonable possibility that it affected the outcome of the trial"]).
This is consistent with the notion expressed by the United States Supreme Court in Bell v. Wolfish that the "presumption of innocence is a doctrine that allocates the burden of proof in criminal trials . . . [that] has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun" (Bell v. Wolfish, 441 US 520, 533).[FN1]
The presumption of innocence does not apply at the pretrial phase because it is not an evidentiary stage of the proceeding and there is no factfinder. The United States Supreme Court analysis in Deck v. Missouri begins with the premise that the limits on shackling in view of the factfinder "has deep roots in the common law" (544 US at 626). However, the Court also notes that "Blackstone and other English authorities recognized that the rule did not apply at 'the time of arraignment,' or like proceedings before the judge" (id.). Arraignment is unquestionably a critical stage of the criminal prosecution, which may necessitate some factual considerations on the part of the court, but it is not a factfinding proceeding and statements made at arraignment are generally not admissible at trial (see People v. L.D., 60 Misc 3d 729 [Sup Ct, Bronx County 2018]). For that reason, this court is not persuaded that the right to an individualized court determination regarding restraint is implicated at arraignment as a matter of course.
Moreover, Plaintiff's complaint is erroneously premised on the notion that the NYPD's restraint Policy is solely responsible for handcuffing criminal defendants at arraignment. But criminal arraignments do not take place in a police precinct, they take place in a courthouse. In [*8]advocating to extend the procedural requirements articulated in Best and Clyde to members of the NYPD, the Plaintiff decontextualizes the holdings of these cases and disregards the role of the court at the arraignment.[FN2]
 Plaintiff attempts to overcome this defect by asserting that the NYPD has an affirmative obligation to "seek an individualized judicial finding of necessity, or any court approval, to restrain defendants during what Plaintiff refers to as the "walk-up stage," where the NYPD escorts criminal defendants into the courtroom and to the podium or table for arraignment, and the "podium stage," where the criminal defendant stands at the podium or table for the duration of the arraignment (NYSCEF Doc No. 42, plaintiff's mem in support at 3). Plaintiff has not provided, nor has this court found any precedent that imposes this affirmative obligation on a law enforcement agency.
As both parties concede, after arrest, a criminal defendant remains physically and legally in police custody before and during arraignment (People v Russell, 80 Misc 3d 1144, 1147, 2023 NY Slip Op 23297 [Sup Ct, Queens County 2023] ["Upon a defendant's arrest, the defendant is in police custody"]; see also NYSCEF Doc No. 32, defendants' mem in support at 4; NYSCEF Doc No. 42, plaintiff's mem in support at 3).[FN3]
Generally, law enforcement has discretion to determine when handcuffing a suspect or criminal defendant in its custody is required to maintain public safety (see People v Allen, 73 NY2d 378, 379-380 [1989] [officers permitted to take rational measures to assure their safety]). The Policy provides direction and guidance to police officers regarding when handcuffing of criminal defendants at arraignment is required to ensure the safety of "all persons, including MOS, court personnel, the public, other prisoners, or the arraigned prisoner" (NYSCEF Doc No. 9, Policy at 2). Courts have recognized that these are reasonable safety goals (See e.g., Carzoglio v Paul, US Dist Ct, SD NY, 17 Civ 3651 [NSR], 2024 WL 776031 2024 [Acknowledging the "clear-cut safety rationale" of standard UCS safety protocol requires that all incarcerated persons, regardless of representation status, remain handcuffed while being transported within the Courthouse]).
For a prosecution initiated by the arrest of a criminal defendant followed by arraignment, arraignment is the first stage of the criminal proceeding (People v Meyer, 11 NY2d 162, 164 [*9][1962] ["An arraignment after an arrest must be deemed the first stage of a criminal proceeding"]; CPL §§ 170.10, 180.10; 210.15]). The arraignment is the criminal defendant's first appearance before the court and is where the court first acquires and exercises jurisdiction over the criminal defendant (CPL § 1.20 [9] ["Arraignment means the occasion upon which a defendant against whom an accusatory instrument has been filed appears before the court in which the criminal action is pending for the purpose of having such court acquire and exercise control over his person with respect to such accusatory instrument and of setting the course of further proceedings in the action"]). Legally, and in the most practical sense, arraignment is the first opportunity for the court to make an individualized determination regarding restraint because the Criminal Procedure Law does not provide any opportunity for "pre-arraignment" practice before the court following an arrest.
As applied to the "walk-up stage," Plaintiff effectively argues that criminal defendants are entitled to an individualized court determination regarding restraint before arraignment begins and before the court has acquired jurisdiction over the criminal defendant. Balancing the need to ensure courtroom security and safety for all individuals in the courtroom with the lack of prejudice to the criminal defendant during the "walk-up,"[FN4]
this court finds no compelling reason to expand the scope of Best to impose an affirmative duty on law enforcement officers transporting arrestees to arraignment. During the "podium stage," the court unquestionably controls the proceeding and bears responsibility for ensuring that the criminal defendant is afforded due process, not the NYPD. Nothing in the Policy supersedes the court's role or prevents the court from making an individualized determination regarding restraint. Plaintiff does not allege that he or his counsel asked the court to direct the NYPD to remove the handcuffs during his arraignment, nor does he allege that the court erred by failing to articulate individualized findings on the record. In any event, this court has no authority to adjudicate such claims. Any such challenge to the criminal court's actions must, of course, be brought on appeal in a court of appropriate jurisdiction.
The court has considered the remainder of arguments raised by the parties and finds them unpersuasive or moot in light of the determinations herein. Therefore, the motion to dismiss is granted.
Accordingly, it is
ORDERED that Plaintiff's motion for class certification (Motion Seq. 001) and the cross-motion for a stay are both denied as moot; and it is further
ORDERED that the City's motion to dismiss (Motion Seq. 002) is granted with prejudice, and the cross-motion for summary judgment is denied.
This constitutes the order and decision of the court.
DATE 7/3/2025
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Although Bell v. Wilfish was decided under federal law, the Court of Appeals in People v. Clyde also relied on the analysis of federal law set forth in Deck v. Missouri with respect to the impact of the shackling on the presumption of innocence and the fairness of the factfinding process and reached the same conclusion under state law (People v Clyde, 18 NY3d at 153 ["Were we to decide this question under state constitutional law, the result would be the same."]).

Footnote 2:Without reaching the non-dispositive question of whether the administrative arm of the New York State Unified Court System ("OCA") is a necessary party to this action, the court acknowledges that the relief sought by Plaintiff necessarily implicates courtroom security, which is also controlled by OCA policy and procedures (see New York State Unified Court System, OCA Support Units, https://ww2.nycourts.gov/Admin/supportunits.shtml#pa4 [last accessed June 24, 2025] ["The Department of Public Safety, headed by the Chief of Public Safety, is responsible for developing uniform guidelines, policies, and procedures for ensuring safety throughout the State Court System."]).

Footnote 3:Russell arises in the context of when a criminal defendant is deemed to be in the custody of the sheriff for speedy trial purposes pursuant to CPL § 30.30 (2) (a). Following a thorough analysis of relevant law, the court held that a criminal defendant's commitment to the custody of the sheriff begins at arraignment when bail is fixed (Russell, 80 Misc 3d at 1149). Whereas it was not relevant to the question presented, the decision contains no discussion regarding the presence of Court Officers in the employ of the New York State Unified Court System or the policy and procedures thereof as it relates to the custody or restraint of criminal defendants at arraignment.

Footnote 4:See discussion regarding presumption of innocence supra at 7.