Matter of Ford v New York City Dept. of Corr. (2026 NY Slip Op 01511)

Matter of Ford v New York City Dept. of Corr.

2026 NY Slip Op 01511

Decided on March 18, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 18, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BARRY E. WARHIT, J.P.
LILLIAN WAN
LOURDES M. VENTURA
DONNA-MARIE E. GOLIA, JJ.

2024-02744
 (Index No. 6406/16)

[*1]In the Matter of Jonathan Ford, respondent,
vNew York City Department of Corrections, appellant.

Steven Banks, Corporation Counsel, New York, NY (Jamison Davies and Lauren L. O'Brien of counsel), for appellant.
Bell Law Group, PLLC, Syosset, NY (Jonathan A. Tand of counsel), for respondent.

DECISION & ORDER
In a proceeding pursuant to CPLR article 78 to review a determination of the New York City Department of Corrections dated January 29, 2016, which terminated the petitioner's employment as a correction officer, the New York City Department of Corrections appeals from a judgment of the Supreme Court, Queens County (Carmen R. Velasquez, J.), entered February 8, 2024. The judgment, after a hearing, granted the renewed petition, annulled the determination, and reinstated the petitioner to his position as a correction officer with back pay and benefits.
ORDERED that the judgment is reversed, on the law and the facts, with costs, the renewed petition is denied, and the proceeding is dismissed.
In 2016, the petitioner commenced this proceeding pursuant to CPLR article 78 to review a determination of the New York City Department of Corrections (hereinafter the DOC) dated January 29, 2016, which terminated the petitioner's employment with the DOC as a correction officer. The petition alleged, inter alia, that in July 2013, the petitioner signed a negotiated plea agreement (hereinafter the 2013 NPA) in which he agreed to settle disciplinary charges brought against him by the DOC under DR Nos. 369/11, 229/12, and 369/12, and, among other things, to revert to the position of probationary officer for a two-year period. The petition further alleged that in August 2015, the petitioner was informed by his timekeeper that his two-year period of probation had ended. Thereafter, in October 2015, the petitioner was arrested for allegedly violating the terms of an order of protection entered against him, and on January 29, 2016, the petitioner received a letter from the DOC terminating his service "as a Probationary Correction Officer." The petition acknowledged that the petitioner received a copy of a second NPA signed in February 2014 (hereinafter the 2014 NPA) in which the petitioner allegedly agreed to settle charges brought against him by the DOC under DR No. 496/13 in exchange for a two-year period as a probationary employee, to run consecutively to the two-year probationary period instituted under the 2013 NPA. However, the petition alleged that the petitioner had never signed the 2014 NPA, that his signature on the 2014 NPA was a forgery, and that even if he had signed the 2014 NPA, "it was under the belief that it was another copy of the [2013] NPA." Therefore, the petition alleged that the petitioner was not a probationary employee at the time that his employment was terminated, and, as such, his termination was in violation of his due process rights.
The DOC cross-moved to dismiss the petition on the ground that the 2014 NPA extended the petitioner's probationary period and, therefore, the petitioner was a probationary employee at the time that his employment was terminated. In March 2017, the Supreme Court [*2]denied the petition and the cross-motion without prejudice to renew, since neither party had submitted a copy of the 2014 NPA. After both parties sought renewal, the court conducted a hearing addressing the issue of whether the petitioner had executed the 2014 NPA. After the hearing, the court determined that the credible evidence adduced at the hearing demonstrated that the petitioner established that he had not executed the 2014 NPA. Accordingly, the court granted the renewed petition, annulled the determination, and reinstated the petitioner to his position as a correction officer with back pay and benefits. The DOC appeals.
"The standard of judicial review in the instant proceeding pursuant to CPLR article 78 is whether the action was arbitrary and capricious, an abuse of discretion, in violation of lawful procedure, or affected by an error of law" (Matter of Still v City of Middletown, 133 AD3d 864, 865). A probationary City employee "may be dismissed for almost any reason, or for no reason at all . . . [and the employee] ha[s] no right to challenge the termination by way of a hearing or otherwise" (Matter of Swinton v Safir, 93 NY2d 758, 762-763 [internal quotation marks omitted]; see Matter of Young v City of New York, 221 AD3d 721, 722; Matter of Trager v Suffolk County, 185 AD3d 697, 698; Matter of Gagedeen v Ponte, 170 AD3d 1013, 1014). When, however, the employee is not probationary, "due process requires the City to provide notice and a minimal opportunity to be heard" (Matter of City of Long Beach v New York State Pub. Empl. Relations Bd., 39 NY3d 17, 24 [internal quotation marks omitted]).
"The employment of a probationary employee may be terminated without a hearing and without a statement of reasons in the absence of a demonstration that the termination was in bad faith, for a constitutionally impermissible or an illegal purpose, or in violation of statutory or decisional law" (Matter of Johnson v County of Orange, 138 AD3d 850, 851 [internal quotation marks omitted]). "Judicial review of the discharge of a probationary employee is limited to whether the determination was made in bad faith or for the other improper or impermissible reasons set forth above" (id.). "The petitioner has the burden of establishing by competent evidence that his [or her] termination was in bad faith or for illegal reasons" (Matter of Bourne v New York City Tr. Auth., 274 AD2d 581, 581).
Here, the credible evidence adduced at the hearing established that after the petitioner signed the 2013 NPA, he received notice from the DOC of additional charges brought against him under DR No. 496/13, which concerned allegations of misconduct separate from the misconduct settled by the 2013 NPA. Additionally, the law firm representing the petitioner in connection with his disciplinary cases sent him a letter dated February 13, 2014, asking him to sign an NPA. The evidence also included a copy of the 2014 NPA, which contained the petitioner's signature in numerous places. Although the petitioner denied signing the 2014 NPA, he acknowledged that the signatures thereupon looked like his own. Since the petitioner failed to present "[s]omething more than a bald assertion of forgery" (Banco Popular N. Am. v Victory Taxi Mgt., 1 NY3d 381, 384), he failed to establish that he did not sign the 2014 NPA or 2014 Probation Agreement, or that his signatures on those documents were forgeries.
Moreover, the credible evidence adduced at the hearing failed to establish the petitioner's allegation that, even if he had signed the 2014 NPA, it "was under the belief that it was another copy of the [2013] NPA." "A party is under an obligation to read a document before signing it, and cannot generally avoid the effect of the document on the ground that he or she did not read it or know its contents" (Matter of Augustine v BankUnited FSB, 75 AD3d 596, 597). Here, the 2014 NPA indicated that the petitioner "acknowledge[d] receipt of a copy of the charges and specifications in connection with DR No. 496/13." Additionally, the section of the 2014 NPA denominated "Probation Agreement" contained a notation of DR "No. 496/13" at the top of the document, and expressly stated that the negotiated plea includes "Full probation for a period of Two (2) Years to run consecutively with the officer's current Full Probation for the settlement of charges under DR #229/12 and 369/12," two of the charges covered in the 2013 NPA. Thus, the contents of that document were clear as to their intent, and the petitioner, whose signature appears on both documents, could not claim that he did not know the contents of those documents (see id.).
Since the petitioner failed to establish that he was not a probationary employee at the time his employment was terminated, judicial review of his discharge "is limited to whether the determination was made in bad faith or for the other improper or impermissible reasons set forth above" (Matter of Johnson v County of Orange, 138 AD3d at 851). Here, the record is devoid of [*3]any evidence that the determination to terminate the petitioner's employment was made in bad faith, in violation of statutory or decisional law, or for unconstitutional or illegal reasons (see Matter of Terelle v New York City Dept. of Educ., 218 AD3d 777, 778), or that the DOC's determination was "made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803[3]; see Matter of Terelle v New York City Dept. of Educ., 218 AD3d at 778).
Accordingly, the Supreme Court, after the hearing, should have denied the renewed petition and dismissed the proceeding.
WARHIT, J.P., WAN, VENTURA and GOLIA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court